## Shoenberger's Executors *versus* Hay *et al.*

*Personal Liability of Grantee not implied from Mention of Encumbrance in* habendum *of Deed sealed only by Grantor.—Covenant, interpreted by Intention of Parties.—Remedy to recover Money charged on Land during Life of Widow.—Devisee of Land subject to Widow's Thirds takes* cum onere.

1. One bought land subject to the payment of the dower of a widow charged upon it in the hands of the grantor, but the grantee did not sign nor seal the deed, in the *habendum* of which, the charge of the dower was expressed: he devised the land to his daughter by his will, and after his death, and when the dower had become payable by the death of the widow, an action of debt was brought against his executors for the dower, by those entitled thereto. *Held*, that the words in the *habendum* of the deed to the testator, did not in themselves import a covenant or promise by the acceptance of it, to be personally answerable to discharge the dower.

2. The true rule ˅for the interpretation of covenants, is so to expound them as to give effect to the actual intent of the parties, as collected from the whole instrument; though the result may be, that words *per se*, implying a personal obligation, will be denied the effect of a covenant or a personal promise to pay, without regard to the enjoyment of the property.

3. That the devisee of the testator took the estate subject to the dower.

ERROR to the Common Pleas of *Blair county*.

This was an action of debt brought in the court below to April Term 1859 by Simon G. Hay (for use of Jacob L. Martin), Samuel Brown, Mary Brown, Valentine Hay, Jacob Biddle, and Catharine Broombaugh, heirs and legal representatives of Valentine Hay, deceased, against John G. Miles and Michael Berry, executors of Peter Shoenberger, deceased, in which, after declaration filed, the following case was agreed upon and stated for the opinion of the court :—

Valentine Hay died in the year 1816, seised of a tract of land in Bedford (now Blair) county, near Upper Maria Forge, having made a will, which was duly admitted to probate in Bedford county. That John Hay, executor of the said Valentine Hay, on the 22d day of July 1816, sold and conveyed the tract of land, of which the said Valentine Hay died seised, to George Hartle, for the sum of $1688.46. That George Hartle subsequently died, and proceedings having been instituted in the Orphans' Court of Bedford county, to make partition and valuation of the said tract of land to and among the heirs of the said George Hartle, and the heirs having all refused to accept the said tract of land at the valuation thereof, on the 28th day of November 1833 an order was issued out of the Orphans' Court of Bedford county to sell the said tract of land, " subject to the dower of the widow of Valentine Hay, deceased, in said premises."

That in pursuance of the said order of the Orphans' Court of Bedford county, the said tract of land was sold on the 26th day

of December 1833 to Samuel Green, for the sum of $825, "subject to the dower of the widow of Valentine Hay," and that said sale was confirmed by the said court on the 28th of January 1834. That Samuel Green sold the said tract of land, on the 4th day of April 1834, to Peter Shoenberger, for the sum of $825, "subject to the payment of the dower of the widow of the late Valentine Hay, deceased, which is $562.82." That the widow of the said Valentine Hay is deceased, and that the plaintiffs are the children and heirs of the said Valentine Hay. The will of Valentine Hay—the deed of Valentine Hay's executor to *Jacob* Hartle—the order of the Orphans' Court of Bedford county for the sale of said tract of land, and the deed by Samuel Green to Peter Shoenberger, and the will of Peter Shoenberger, are to be considered a part of the case stated. Dr. P. Shoenberger paid to the widow of Valentine Hay the annual interest on the dower, as it is called, down to the 1st April 1851, being the time when a lease for life or four years (in case of the testator not living to the end of the said four years), from the said Peter Shoenberger to John W. Duncan, commenced, after which time the said John W. Duncan paid whatever interest was paid, if any, to the said widow; which said lease is made a part of this case stated. Dr. Peter Shoenberger devised the tract of land, hereinbefore described, to his executors, in trust for the use of his daughter, Martha K. Duncan, for and during her natural life, and upon her death he devised the remainder to her children. The devise was made in the following form, that is to say :—

"Seventhly. I devise to my executors, hereinafter named, the survivors and survivor of them, and to my administrators for the time being, with the will annexed, for and during the natural life of my daughter, Martha Duncan, in trust for the use and benefit of my said daughter, Martha Duncan, for and during her natural life, the following-described real estate, that is to say, Bloomfield Furnace, with all the lands and tenements thereto belonging, and of which the following is a schedule, viz. :" &c. (Then follows an enumeration and description of the lands by tracts.) "Also, I devise to my daughter, Martha Duncan, in trust as aforesaid and same manner, the Upper and Middle Maria Forges, with all the farms, lands, and tenements thereto belonging, situate in Blair county, and designated in the following schedule, viz. :" &c. (Then follows a list of tracts by description in detail, in which is included the Valentine Hay tract, hereinbefore mentioned.) After all the lands included in the devise aforesaid were described and enumerated, the will proceeds as follows, viz. : "And I direct that the rents, issues, and profits of the said hereinbefore-described real estate so devised in trust for the use and benefit of my daughter, Martha Duncan, shall be

regularly and annually paid to my said daughter, Martha Duncan, for her sole and separate use, free from the control or disposition of her present or any other future husband whom she may at any time have during her natural life, and, upon her death, I devise the same to her surviving children, and the lawful issue of such of her children as shall be then dead, leaving lawful issue, as tenants in common, in equal shares, such issue to take, in equal parts, the share only which would have been taken by his, her, or their parent, had such parent been living at the time of the death of my said daughter, Martha Duncan, the said surviving children, and the lawful issue of such as shall be then dead at the time of the death of my said daughter, Martha, to have and to hold the said lands and tenements hereby devised to them, upon the death of my said daughter, Martha Duncan, as a remainder as purchasers, and not by descent."

If the court be of opinion that the plaintiffs ought to recover from the defendants the dower that remains a charge upon the said tract of land, and subject to which Peter Shoenberger purchased the same, then judgment to be entered for the plaintiffs for the sum of $562.82, with interest from the 1st day of July 1854, the time of the death of the widow of Valentine Hay; but if not, then judgment to be entered for the defendants—the costs to follow the judgment, and either party reserving the right to sue out a writ of error therein.   Either party to have the right to take a writ of error.

On hearing, the court below gave judgment for the plaintiffs. The case was thereupon removed into this court by the defendants, who assigned for error the entering of judgment for plaintiffs.

*J. G. Miles*, for plaintiffs in error.—The question is, Does Martha K. Duncan take the land devised *cum onere*, or must the charge which rested upon it in the lifetime of the testator be paid out of his residuary estate?   It is believed that the case of Bell's Executors *v.* Bell, 8 Casey 311, conclusively settles the point against the defendants in error.   The decree of the Orphans' Court of Bedford county for the sale of the land as the property of George Hartle, deceased, ordering the sale to be made "*subject to the dower of the widow of Valentine Hay, deceased, in said premises*," the deed from Adam Black, administrator of Hartle, to Green, made in pursuance of and in conformity to the decree, and the deed from Green to Shoenberger, in the *habendum* of which, are the following clauses, viz.: "Subject, however, to the payment to the said Samuel Green of the sum of $550, part of the consideration-money above mentioned, and for which the said Peter Shoenberger has given his judgment-notes bearing even date herewith, and *subject also to the payment of the dower of the widow of Valentine Hay, deceased*, and *which the above tract of*

[Shoenberger's Executors v. Hay.]

*land was subject to in the hands of the said Samuel Green,*" all show a charge in favour of the widow of Valentine Hay, standing in the *title* devised to Martha K. Duncan, similar in its nature to *statutory* dower, and so treated and called in the decree of the court and in the deeds themselves. A judicial sale of the land, as the property of either Green or Shoenberger, upon the judgment of a third person, would not have extinguished the charge in question: Dewalt's Appeal, 8 Harris 236. The case of Campbell *v.* Shrum, 3 Watts 60, cited to support the position taken by Hay's heirs, was the case of an action of covenant founded upon articles of agreement, sealed by both parties, in which the one party sued the other for not paying the debt of the first to a third person. The payment of that debt, under the terms of the agreement, was adjudged to be the principal consideration of it, and, therefore, in the case of an unexecuted contract, signed by both parties, held to amount to a covenant to pay it. It was very unlike the case of a deed conveying the legal title subject to a charge, which adhered to it in its various stages of transmission to the present owner, under the will of Dr. Shoenberger.

In addition to the leading case of Bell *v.* Bell, the following authorities are clear to the point that the residuary estate is not liable upon the facts of the case: Keyzey's Executor *v.* Keyzey, 9 S. & R. 73; Toller on Executors 419; 2 P. Wms. 664; 4 Kent's Com. 421; Hoff's Appeal, 12 Harris 204; 1 Maddock's Ch. 592; 3 Ves. 128, note (*a*) under case of Woods *v.* Huntingford; Butler *v.* Butler, 5 Ves. 534.

In the absence of any proof to that effect, two leading facts prove that Dr. Shoenberger did *not* make the debt in question his own:—

1st. In the deed from Green to him there is evidence of a discrimination in that respect between the *two* dowers which encumbered the land at the same time, to wit, the one in question and the other in favour of the widow of Hartle. The one shows personal obligation, the other none.

2d. The testator paid the annual interest to Mrs. Hay during the time only when he was in the *possession* of the land.

*E. Hammond*, for defendant in error.—The question presented for adjudication is not as stated by the plaintiffs in error, whether Martha Duncan takes the land devised, *cum onere*, but whether the estate of Dr. Shoenberger is bound to pay the claim set forth in the case stated?

Dr. Shoenberger purchased the land from Samuel Green for $825, "subject to the payment of the dower of the widow of the late Valentine Hay, deceased, which is $562.82." This constituted, on the part of Dr. Shoenberger, an agreement to pay, in addition to the $825, the sum of $562.82. The payment of the sum of $562.82 is part of the consideration for which the land was

conveyed to Dr. Shoenberger: Campbell *v.* Shrum, 3 Watts 60; Blank *v.* German, 5 W. & S. 36.

It is evident that the estimated value of the land by Green and Dr. Shoenberger embraced the money for which this suit has been brought, and that it was deducted or retained by Dr. Shoenberger, he paying Green the estimated value of the land less the sum of $562.82. A conveyance in consideration of the assumption of a lien on the land renders the grantee liable to pay it, and is a valuable consideration.

Whether covenant would be the proper form of action, where it appears that he had not executed the deed, but was a party to it, and held under the conveyance, it is unnecessary to decide; for if covenant would not lie, an action on the case would, and the agreement in writing would be sufficient evidence: Dubbs *v.* Finley, 2 Penna. State Rep. 397. But debt and not covenant is the proper action: Maule *v.* Weaver, 7 Barr 329. See McCracken's Estate, 29 Penna. State Rep. 426, as to liability of defendant.

In the case of Bell's Executor *v.* Bell, relied upon by the plaintiffs in error, there was no covenant to pay the "statutory dower in favour of a widow of a former owner." The suit was brought by the devisee of the land against the estate of the devisor.

Dr. Shoenberger could not, by leasing or disposing of the land in any way, change his liability under the covenant and agreement in the deed by Green to him. In his will he directs his executors to pay his just debts and funeral expenses, and the expenses of the administration of his estate, out of his personal estate not hereinafter specifically bequeathed, and his real estate not specifically devised; and thereby intended the lands specifically devised in his will to pass to the devisees free from any encumbrance. It cannot be doubted that Dr. Shoenberger became personally liable to pay the sum of $562.82; and if so, his executors are directed to pay the same in his will.

*Miles*, in reply.—Dower is an estate in the nature of a rent-charge, not an encumbrance upon land: Power *v.* Power, 7 Watts 212; Thomas *v.* Simpson, 3 Barr 69; 3 Id. 70; Shaupe *v.* Shaupe, 12 S. & R. 12. It is a continuing charge during the life of the widow of a deceased husband, different from the debts and encumbrances which formed the subject of the cases referred to in the argument of the counsel of the defendants in error: McCracken's Estate, 5 Casey 428.

Every case cited on the other side was ruled upon the force of an agreement back of the deed, except Maule *v.* Weaver, 7 Barr 329, where it was held that an action of covenant could not be sustained against a grantee of a deed recited to be an indenture *inter partes*—sealed alone by the grantor, in which was

[Shoenberger's Executors v. Hay.]

contained a covenant on the part of the grantee to pay a rent reserved out of the land. That was the only point ruled in the case.

Our case is not that of a first grantee, but of a testator, who in his lifetime occupied the position of a third in the chain of connection between the original proprietor, Valentine Hay (the dower of whose widow was a charge upon the land), and the testator's devisee. It is clearly distinguishable from the cases relied upon in the opposite argument, and strictly within the ruling of Bell v. Bell. Dr. Shoenberger was a third grantee of the *legal* estate charged with a continuing dower, conveyed by a deed-poll *subject* to such charge. In regard to such a deed, the rule of construction would be different from that which would govern a paper sealed by both parties. See Poyntell v. Spencer, 6 Barr 256. The principles settled after an elaborate discussion by most eminent counsel in the case of Walker v. Physick, 5 Barr 193, must rule this case.

This same principle is found in Royer v. Ake, 3 Penna. Rep. 464; Wiedner v. Foster, 2 Id. 25; Thomas v. Connell, 5 Barr 14; Wickersham v. Irwin, 2 Harris 108, 110, 111; Berry v. Mc-Mullen, 17 S. & R. 87; Doe v. Provoost, 4 Johns. 66; Hogan v. Jackson, Cowper 304, 305.

Upon the question of the intention of the testator, there is nothing in the will to take the case out of the rule laid down in the case of Bell v. Bell. The same reasons exist in this case as in that, for holding that there is a total absence of an intention manifested to exonerate the land from the charge, and to throw it upon the residuary fund.

The opinion of the court was delivered, July 25th 1861, by

THOMPSON, J.—This was an action of debt against the plaintiffs in error, to enforce an alleged undertaking of their testator to pay off a dower; subject to which, on the 4th of April 1854, he purchased and accepted a conveyance of a certain piece or tract of land, formerly belonging to Valentine Hay, deceased, and which, by his will, he devised before the same became payable, to Mrs. Duncan, his daughter. Is it a debt chargeable to the residuary estate of Dr. Shoenberger, or does the devisee take the land *cum onere?*

In the case of Wolveridge v. Steward, 3 Moore & Scott 561, it was held in the Exchequer Chamber (opinion of the court by Lord Denman, C. J.), on an indenture *sealed by both parties*, the words "subject nevertheless to the payment of the yearly rent and performance of the covenants and agreements reserved and contained in the said indenture of lease," &c., being inserted in the *habendum*, did not, without the intent otherwise appeared, imply an agreement or covenant to pay the rent and perform the

covenants; that the words in that place naturally import or qualify the generality of the words which precede them, and his lordship cites the definition of the office of a *habendum* from Co. Litt. 6 : " It doth qualify the general intendment of the premises; and the reason of this is, for that is a maxim of law, that every man's grant shall be taken by construction of law, most forcible against him." His lordship also in that opinion explains a seeming difference between that case and Barnett *v.* Lynch, 5 B. & C. 597, determined in the King's Bench. The difference arose out of the difference in the instruments, and perhaps form of action, but it is more apparent than real.

Without affirming the principles of this case expressly, our court has done so impliedly, by looking, notwithstanding the words, to the entire agreement for the evidence of intent to make the debt or encumbrance the debt of the grantee in the conveyance. Thus, in McCracken's Estate, 5 Casey 428, the intent was deduced from the act of the assignee buying but an equitable interest, and procuring an assignment of the contract between the original vendors and his assignor to himself; which it was thought evinced an intent to be bound as his assignee was bound. So, too, this intent was thought to be evinced by the testator's will, in the manner in which he devised his estate. So in Bell's Executors *v.* Bell, 8 Casey 309, words such as exist here were held not sufficient of themselves against the improbability that any man would so contract as to tie up his estate indefinitely from final administration, until the widow's dower should become payable.

In Walker *v.* Physic, 5 Barr 193, the words were, " under and subject to the payment of the said rent, as the same shall accrue, for ever," in the *habendum*. Mr. Justice Kennedy, in an elaborate opinion at Nisi Prius, considered these words in the same light as did Lord Denman in Wolveridge *v.* Steward, as a qualification of the estate granted, and also to save responsibility under the words " grant, bargain, and sell." In affirming that case in banc, Gibson, C. J., says the true rule of interpretation is the intent of the parties. This of course denied to the words, *per se*, the effect of a covenant, or a personal promise to be liable. Many reasons, derived from results which might flow from holding them to have the force of an agreement to pay, are given in that case, proving what has already been said, that such a conveyance does not, *per se*, imply a personal covenant to pay without regard to the enjoyment of the property.

The same principle was held in Wickersham *v.* Irvine, 2 Harris 108. But Mr. Justice Rogers denied what has sometimes been asserted, that buying, subject to encumbrance merely, created no privity of contract. That the assignee, and so with his successors, were liable for ground-rent only on privity of estate arising

[Shoenberger's Executors *v.* Hay.]

from the " actual or beneficial enjoyment of the premises, or the right of possession and enjoyment."

These authorities are sufficient to establish, beyond doubt, that the words in the *habendum*, in the deed by Green to Dr. Shoenberger, " *subject also to the payment of the dower of the widow of Valentine Hay, deceased, and which the above tract of land was subject to in the hands of the said Samuel Green,*" do not, of themselves, the deed not being sealed by the latter, import a covenant or a promise by acceptance of it, to be personally answerable to discharge the dower. The dower having become due and payable after the doctor's death, and after the estate had passed by devise to Mrs. Duncan, upon no principle of privity of contract or estate is his estate answerable to discharge the encumbrance.

As we see no indication whatever, outside of the words used, evincive of an intent to make the payment of the decree a personal obligation by the testator, we are clearly of opinion that the case must be reversed. It is not, in principle, distinguishable from Bell's Executors *v.* Bell, already cited, and which followed abundance of authority, as appears by the citations therein. In the case in hand, the dower was not even counted as part of the purchase-money. That was $825 for the land, " subject to the payment of the dower," &c., " which is $562.82." " I have no doubt," says Gibson, C. J., in Walker *v.* Physic, " that they actually meant no more than to say the grantee was to take an encumbered estate, without recourse to the grantor for a breach of the statutory covenant arising from the words " grant, bargain, and sell." And the fact that the encumbrance was not included in the purchase-money, is a strong circumstance that this was the understanding of the parties. I need do no more than to notice one or two cases relied on by the defendant in error.

The facts of Campbell *v.* Shrum, 3 Watts 64, were, in some particulars, like those in McCracken's Estate. Shrum sold to Campbell, by articles of agreement, an equitable title, which agreement both parties signed and sealed. By these Campbell agreed to buy, for a consideration to Shrum, " subject to the payment of the *purchase-money* and *interest now due,* on articles of agreement between Thomas Netly and James Gibson of the one part, and the said Shrum of the other part." It is evident that the principal consideration for the sale to Campbell by Shrum, was, that the former should discharge the arrears then due by the latter, and for which he was liable to be called on at any moment. It was the evident intent apparent in the covenants, as appears in the opinion of the court, which led to the ruling there. No one can doubt its propriety, I think. But it does not conflict with the case in hand. The dower was not

[Shoenberger's Executors *v.* Hay.]

payable when Dr. Shoenberger bought, nor did it become so in his lifetime.   The estate came to him charged with it, and it is evident he took it to hold as encumbered.

The only other case to be noticed is Maule *v.* Weaver, 7 Barr 329.   We may dismiss it with the only remark remaining, in view of the case before us, and that is, that the point there decided was that covenant does not lie against a party who has not signed or sealed the instrument sued on.   No point of that kind arises here.   This was an action of debt, and as there can be no doubt but that it would lie in all cases for the recovery of a specific sum of money, we see no objection to the form of action.

But for the reasons assigned, the judgment is reversed.

Judgment reversed, and judgment for the defendants, with costs.