## Prechtel et ux. v. Miller et ux.

*M. J. Goodman*, for plaintiffs.

*George A. Rupp*, for defendants.

HENNINGER, P. J., August 1, 1955.—Plaintiffs, husband and wife, brought this action for breach of general warranty in a deed from defendants, also husband and wife, to them of premises 1344-1346-1348 North Eighteenth Street, South Whitehall Township, Lehigh County, because the State Highway Department had, prior to the delivery of the deed to, plaintiffs, appropriated an irregular portion of the property as an easement for highway and slope. Defendants denied the warranty and plaintiffs' claim for damages.

A trial without jury was held at which most of the essential facts were stipulated and some testimony was taken. From said stipulations and testimony, the court made the following

## Findings of Fact

1. Plaintiffs, Charles E. Prechtel and Gloria R. Prechtel, are individuals residing at 1346 North Eighteenth Street, Allentown, Lehigh County.

2. Defendants, Lester G. Miller and Minnie S. Miller, are individuals residing at 141 South Sixth Street, Allentown, Lehigh County.

3. On August 28, 1951, defendants entered into a written agreement to grant and convey unto plaintiffs premises 1344, 1346 and 1348 North Eighteenth Street, in the Township of South Whitehall, Lehigh County, containing in front on North Eighteenth Street 60 feet and extending in depth of equal width 120 feet, for the consideration of $8,000, free and clear of all encumbrances.

4. On September 11, 1951, defendants conveyed the said premises to plaintiffs upon receipt of the said consideration, by deed containing the following warranty:

"AND the said parties of the first part, for themselves, their heirs, executors and administrators, do by these presents, covenant, grant and agree to and with the said parties of the second part, their heirs and assigns, that they, the said parties of the first

part, their heirs all and singular the hereditaments and premises herein above described and granted, or mentioned, and intended so to be, with the appurtenances, unto the said parties of the second part, their heirs and assigns, against them the said parties of the first part, and their heirs and against all and every other person or persons whomsoever, lawfully claiming or to claim the same or any part thereof."

5. On August 23, 1951, the Governor of Pennsylvania formally approved a plan for the "Thruway" of U. S. Route 22, which passed over and upon the premises above described, then of defendants, later conveyed to plaintiffs.

6. On or about May 1, 1952, this plan was recorded in the Lehigh County recorder's office as provided by law.

7. None of the parties to this transaction had any knowledge of the contemplated or actual taking of any part of the premises for State highway purposes until long after the delivery and execution of the deed to plaintiffs.

8. The Commonwealth of Pennsylvania, about May or June, 1952, entered upon the premises conveyed by defendants to plaintiff and, for roadway and slope, occupied:

"ALL THAT CERTAIN piece of land situate in the Township of South Whitehall, County of Lehigh and State of Pennsylvania, bounded and described as follows:

"BEGINNING at a point in the easterly line of Bird Street, being the Southwest corner of land now or late of Edward and Lillie Nagle; thence along the Easterly line of Bird Street in a southerly direction a distance of thirty-eight (38′) feet, more or less to a point; thence in a northeasterly direction a distance of sixty-five (65′) feet to a point; thence in a northwesterly direction a distance of ten (10′) feet to a

point; thence in a northeasterly direction a distance of forty (40') feet to a point in the southern line of property now or late of Edward and Lillie Nagle; thence in a westerly direction a distance of ninety (90') feet to a point the place of beginning."

9. The roadway is built at an elevation 17½ feet higher than the level of the ground upon which plaintiffs' home is built.

10. The loss to plaintiffs by reason of the occupation by the Commonwealth of Pennsylvania of this part of plaintiffs' premises is $2,500, not counting the cost of building a retaining wall or making adjustments to the septic tank and drainage system which would cost $800 to construct.

11. Defendants, on February 8, 1954, received the sum of $2,500 as their damages for the taking of said land by the Commonwealth of Pennsylvania and executed a release therefor.

12. Defendants paid out of the said sum $350 as an attorney fee for collection and $1,075 to the Allentown National Bank, assignee of a purchase money mortgage given by plaintiffs to defendants as part of the purchase price for these premises and assigned by defendants to said Allentown National Bank.

13. Plaintiffs had no knowledge of this settlement, or of the disposition by defendants of the proceeds, nor did they consent thereto.

### Discussion

This case is ruled by Wood v. Evanitzsky, 369 Pa. 123. In that case plaintiffs had deeded a property by general warranty deed to defendants and had taken back a $1,000 purchase money bond and mortgage. Three months prior to the conveyance, the Commonwealth had appropriated a part of the property for highway purposes through the signature of the Governor approving the plan. Plaintiffs had received $850 in settlement of the claim for damages and defendant

claimed a setoff against the judgment upon the purchase money mortgage bond upon the theory that the general warranty had been breached by the taking of a part of the conveyed premises for highway purposes. The Supreme Court sustained this view, reversing the Superior Court, 168 Pa. Superior Ct. 484, which had sustained the lower court in holding that the purchasers had purchased with knowledge of the easement.

The Wood case, supra, was a stronger case against the purchaser than ours, for in that case there was a dispute as to evidence (old stakes in the ground) of the existence of an easement. In our case, neither party was chargeable with any notice of the taking, despite its completeness, under the Act of June 1, 1945, P. L. 1242, as amended, 36 PS §670-210, by the Governor's approval of the plans prior to the agreement of sale.

There is no doubt of the propriety of defendants' claim to damages which are personal and do not run with the land: Hunter v. McKlveen, 353 Pa. 357, 362; Smith v. Commonwealth, 351 Pa. 68, 71.

On the other hand, there is no doubt that defendants, by general warranty deed, conveyed to plaintiffs property whose title had already passed from them because of earlier condemnation by the State. The Supreme Court decision in Wood v. Evanitzsky, supra, page 129, contains the following language:

"But they also had the right to accept a deed without reservations or exceptions of all they bought and rely on the general warranty to protect them against any encumbrance on the title."

Defendants cite Patterson v. Arthurs, 9 Watts 152, for the proposition that the taking of land for road purposes is not a breach of a general warranty of title and the quotation would be apt if it appeared in the books as it does in the brief. The court in the

Patterson case, page 154, expresses surprise and amazement that anyone should consider that a general warranty "embraced a public road or highway, *in being*, at the time, and previously, laid out, opened, and used, through or over the estate". (Italics supplied.) Through some inadvertence it is quoted in the brief as *"not being"* and the words "opened and used" are omitted, changing the entire meaning of the opinion. In the Patterson case, the existence of a public highway was apparent to both parties when the warranty deed was delivered; in our case its existence was not even suspected by either party.

In light of the Wood v. Evanitzsky case, supra, we need not consider defendants' contention that a general warranty is protection against persons and not against the state. It is true, as contended by defendants, that a general warranty will not protect against future exercise of the right of eminent domain by the sovereign because all titles are held subject to that right but that does not prevent a landholder from assuring his purchaser that his land will not be diminished by a past act of condemnation, whose results are not apparent upon inspection of the premises or a search of available records.

Defendants cite Herbert v. Northern Trust Company, 269 Pa. 306, for the proposition that before suit for breach of general warranty, there must be an eviction, "either actually or constructively, as a result of some defect of title, before a recovery is warranted". Clearly there was an eviction here, and there was a defect in plaintiffs' title, because defendants sought to convey to them property which had already been taken by the Commonwealth.

The case of Ake v. Mason, 101 Pa. 17, cited by defendants, has lost most of any force it may ever have enjoyed by reason of the discussion of it in a footnote to Wood v. Evanitzsky, supra, page 129.

This leaves three problems for discussion. Plaintiffs' damages for the breach of warranty might be more or less than the damages received by defendants. The parties have agreed that it is the same, plus any claim for a retaining wall and two other items. We are of the opinion that the additional claims do not arise so much from the Commonwealth's taking a portion of the land plaintiffs expected to receive from defendants as from the use of the thruway. Defendants, in our opinion, are not answerable excepting for the diminution of plaintiffs' property.

While defendants used good judgment in employing counsel to obtain settlement with the Commonwealth, it must be remembered that this action is not for an accounting for moneys received from the Commonwealth, but it is for plaintiffs' independent loss because a part of their land has been taken from them.

The same logic could apply to plaintiffs' contention that they should receive in cash their entire damages, without giving defendants credit for the $1,075 paid on account of the mortgage. Besides the unfairness to defendants of any such finding, it would serve no good purpose so to rule, for if defendants were not given credit for the $1,075, they would be subrogated to the bank's rights in the mortgage pro tanto, subject of course to the bank's priority of interest. Plaintiffs would not be benefited and the parties' relations would be greatly complicated.

But if defendants sought to convey what they did not own, so plaintiffs mortgaged what they did not own and they are guilty of breach of warranty as are defendants. If there has been a loss to plaintiffs, there has been a corresponding loss in security to the mortgagee. Since defendants have induced their assignee to accept the property in its present state as security for a mortgage reduced by only $1,075, it is no concern of ours whether or not that represents a

fair payment to protect the mortgagee for diminution of security through the condemnation.

We apply to the facts found, the following

*Conclusions of Law*

1. The approval by the Governor of plans for a relocation of a State highway constitutes a taking by eminent domain on that date of all land embraced within such relocated highway and all land required for slopes and drainage.

2. The owner of the land on the date of such taking has a personal claim for all damages incurred, which claim does not run with the land or pass to this grantee.

3. A grantee under a general warranty deed without notice or knowledge of such taking is entitled to all of the land conveyed and may bring an action for breach of the warranty if he is evicted from any part of the land conveyed to him.

4. The grantees, in an action for breach of warranty for land taken in eminent domain prior to the grant, are not bound in determining their damages by the amount voluntarily accepted by their grantors in settlement of damages for the condemnation of their land.

5. A mortgagor warrants the title to the property mortgaged and therefore is answerable to the mortgagee for diminution of the property conveyed to the mortgagee as security.

6. Where the owner at the time of condemnation has been compelled to pay to the mortgagee of his grantee a part of his damages for condemnation of land, such payment is properly chargeable against any damages later recovered by the grantee-mortgagor against the grantor.

7. The damages suffered by plaintiffs by reason of the breach of warranty, in that a part of the property conveyed to them by defendants had heretofore been condemned for State highway purposes, is $2,500.

8. Since $1,075 has been paid by defendants to plaintiffs' mortgagee as a credit to plaintiffs upon said bond and mortgage, defendants are entitled to credit therefor against the amount owed by defendants to plaintiffs.

9. Defendants are indebted to plaintiffs in the amount of $1,425.

Now, August 1, 1955, the foregoing decision is ordered filed and notice thereof served upon counsel for the respective parties and if no exceptions are filed thereto within 30 days after such service, judgment shall be entered in favor of plaintiffs and against defendants in the amount of $1,425 and costs.