Goldberg *v.* Nicola et al., Appellants.

Argued April 3, 1935. Before FRAZER, C. J., SIMP-
SON, KEPHART, MAXEY, DREW and LINN, JJ.

*Kenneth G. Jackson,* with him *C. M. Thorp, Jr.,* of *Thorp, Bostwick, Reed & Armstrong,* for appellants.

*James A. Geltz,* with him *John G. Koedel,* for appellee.

OPINION BY MR. JUSTICE KEPHART, May 15, 1935:

Mary Nicola and her husband, appellants, owners of a lot of ground, conveyed a portion of it to Goldberg, appellee, subject to a restriction that "No building more than three (3) stories in height shall be erected or maintained upon the above described lot of land." Appellants also agreed that no building more than three stories in height shall be erected on the property remaining in their ownership and from which this lot was taken. This remaining land with the restriction was sold to Crump and McQuillen, who built an apartment house thereon in violation of the building restriction. Goldberg, the first vendee, brought suit against the Nicolas, the original covenantors and grantors, for damages resulting from the violation of the covenant, recovered a verdict and a judgment was entered thereon. The Nicolas appeal.

Does the restrictive covenant run with the land, and if so, when breached by the vendee of the original covenantors, are the latter liable in damages for that breach? The covenant not to erect a building more than three stories in height contained in the covenantors' deed to their covenantee, the grantee, and binding the remaining part of this land owned by the covenantors, was a restrictive covenant. Where an instrument conveying or granting an interest in land restricts the use of that land to a certain definite purpose which will be beneficial to the land affected and the remaining land in the grantor out of which

the grant is made or to other lands of the grantor adjacent thereto, such restriction is a covenant real and becomes a part of the estate that is granted, binding successively the owners of the land. It limits to the extent of the prohibition the unlimited use which would otherwise be incident to the fee granted. The privity of estate existing between successive owners causes such covenant to bind the assignees of the covenantor as well as the assignees of the covenantee; the beneficial right thereby created as well as the impediment to or burden on the full enjoyment of the land, follows the ownership of the land with which it is inseparably connected. The leading case on the subject is Spencer's Case, 5 Coke 16, decided in 1583, and it was then determined that the test as to whether the contract or covenant ran with the land and would be binding upon and enforceable by successive owners was whether it "doth not touch or concern the thing demised."[1] A restriction on the use of land contained in a deed is appurtenant or attached to the land conveyed, and where the restriction either benefits or also applies to other land remaining in the grantor it is attached to that land also.

It has been held in some instances that the restriction is in the nature of a covenant; in others as an equitable easement. See Clark, Covenants and Interests Running with Land, page 148 et seq. The difficulty in determining whether a covenantor who has parted with his title should be liable in the future for a breach of the covenant by a subsequent grantee comes from a failure to properly appraise the real intent and purpose of the restriction and its relation to the land involved. The difficulty has been augmented by the rule that has prevailed in leases of land where liability for breach of covenant may be imposed on the lessee regardless of the number of assign-

---

[1] See Smith's Leading Cases (8th ed.), page 145 et seq., for an interesting and exhaustive discussion of this case by Judge HARE and the Wallaces.

ments of the lease, and the grip of personal liability on a vendor in a deed for breach of covenant or warranty of quiet enjoyment.

In leases among the usual covenants running with the land are those to repair and to pay rent; in all these contracts the personal credit and standing of the lessee to whom the contract is made is the moving consideration and continues so in preserving that liability to the original lessee or covenantee in the leases.

Whether or not a party to a deed is liable for a breach by subsequent grantees of a covenant that runs with the land must depend upon the nature and character of the particular covenant, and the intention of the parties in the creation of the covenant, construed in relation to the relative positions of the land and parties affected. Undoubtedly in the restricted use that was imposed on this land, there was a direct and positive invasion of the ordinary rights of fee simple owners; indeed it carved an interest from an ordinary fee right. It was intended, however, to benefit the property affected and its owners by making it more attractive for sale and securing to it light and air. It was to the owners a direct benefit; while on the land both covenantor and covenantee, with their respective assigns, had a substantial interest in the life of the covenant. When either parted with the title he parted with that interest. The one thus separating himself from the land could not enter the aliened premises to prevent a breach, he could enjoy no benefit from it, nor could he perform the covenant. It was so intended by the parties and was effective alike on covenantor and covenantee. The interest thus created was centered in or attached to the land itself, for the benefit of the other parcel. When the person divested himself of title, he transferred to his grantee the same right in the covenant that he possessed, with the same obligation imposed. There was never any intention to impose personal responsibility apart from privity of estate, or to enter into an engagement on personal credit. On the contrary, there was set up a con-

tract operative and binding upon owners and future own-
ers of the land as long as privity of estate lasted between
them.

The theory on which our court enjoins violation of re-
strictive covenants (and their enforcement is mostly
through equity) has been that of an easement or property
right in the land restricted. Each one affected by the re-
striction has a corresponding right as against the other to
see that it is obeyed. Our equity cases emphasize the in-
tent of the parties and examine the language of the cove-
nant in the light of the attending circumstances.

The authorities have recognized the distinction be-
tween real covenants in landlord and tenant relations,
and real covenants that are restrictive covenants running
with the land and contained in the deed. The contractual
aspect of a covenant in a lease, as for instance to pay
rent, is never lost sight of; although it runs with the
land, the original covenantor is liable even if he has as-
signed the lease. As to him the covenant subsists, as
stated in Washington Natural Gas Co. v. Johnson, 123
Pa. 576. There are two classes of covenants annexed
to land which follow it into the hands of heirs and
assigns. The one class, such as the usual covenants for
title, affect successively the owners of the land, who are
bound by the privity of contract between them. The
other class, represented by equitable easements, is at-
tached to the land itself and follows the possession of the
land: Norcross v. James, 140 Mass. 188; 1 Smith's Lead-
ing Cases 145; Holmes, The Common Law, 394 et seq.
As long ago as Pakenham's Case, Y. B. 42, Ed. III 3,
which is thoroughly discussed and explained by Justice
Holmes, the distinction between these two types of cove-
nants was recognized and the subject of argument. It is
impossible to distinguish between the landlord and ten-
ant cases and the restricted covenant cases unless the
principle is kept in sight that these latter covenants are
attached to and for the benefit of the land, creating a
property right. We have held that a restricted covenant

of this nature is a property right, in Clark v. Martin, 49 Pa. 289, where it was said that a deed restricting buildings to a certain height gave the grantor, the covenantee, a right to have the "privilege or appurtenance" of light and air over the restricted land. And, in Muzzarelli v. Hulshizer, 163 Pa. 643, we said: "On the other hand, it is claimed by plaintiff that the building restriction above quoted is in the nature of a covenant running with the land, and was intended to create and did create an easement of light and air in favor of her (plaintiff's) lot. . . . Giving to the words employed their ordinary and proper meaning, we are unable to see that the clause in question is susceptible of any other reasonable construction."

If we view a restricted covenant of this type as a property right, imposing negative action on the uses to which land may be put, we shall have no difficulty in holding that the person liable for a breach of the covenant is the one in possession at the time the breach occurs.

The authorities cited in the note sustain the finding that the restriction in the deed was a covenant running with the land.[2]

We have considered the question of liability for breach of covenant by a subsequent holder. In Bland's Admr. v. Umstead, 23 Pa. 316, the parties made an agreement for the maintenance of a partition fence. One of the parties died and later his part of the fence was destroyed. His administrators refused to replace it. The other party did so and sued to recover the cost. In considering the words of the covenant, the relation of the parties and their intent, we held that the administrators were not liable, the covenant imposing no personal liability. It will be noted that this case dealt with an affirmative cov-

---

[2] Pratt v. Harding, 30 Pa. 525; Clark v. Martin, 49 Pa. 289; St. Andrews' Church's App., 67 Pa. 512; Landell v. Hamilton, 175 Pa. 327; Electric City Land Co. v. Coal Co., 187 Pa. 500; Kelly v. Nypano R. R., 200 Pa. 229; Wimer v. Yellin, 286 Pa. 33.

enant or agreement requiring positive acts to be performed. In Carr v. Lowry, 27 Pa. 257, the intestate for himself and his personal representatives, covenanted to keep certain tailraces on the adjoining land of plaintiff in repair. The intestate sold his land, and subsequently the repairs were not made. The plaintiff sued the personal representatives of the intestate for damages. We held an obligation was created that would pass to and rest on everyone who owned the mill but the covenant had nothing in it of a personal character and that could be enforced against the personal representative of the original covenantor.

In Shoenberger's Exrs. v. Hay, 40 Pa. 132, land was deeded to Shoenberger with the words in the habendum "subject also to the payment of the dower of the widow of Valentine Hay, deceased, and which the above tract of land was subject to in the hands of Samuel Green." Shoenberger devised the property to his daughter. The dower became due after his death. It was held that the estate was not bound. This court said: "As we see no indication whatever, outside of the words used, evincive of an intent to make the payment of the decree a personal obligation by the testator, we are clearly of opinion that the case must be reversed."

Washington Nat. Gas Co. v. Johnson, supra, relied on by appellee does not control. We held that the covenant to drill the well ran with land but that it did not do so after it was breached by an assignee. It was a typical case of where a lessee may be held liable for nonpayment of rent or similar consideration. The original lessee remains liable on his covenant notwithstanding he has assigned the lease (Fisher v. Milliken, 8 Pa. 111; Ghegan v. Young, 23 Pa. 18; Ralph v. Deiley, 293 Pa. 90), but assignees of the lease are liable only for breaches occurring while they are in possession, since their relation to the lessor is based not upon the contract but upon privity of estate: Negley v. Morgan, 46 Pa. 281; Borland's App., 66 Pa. 470; Lowry v. Atlantic Coal Co., 272 Pa. 19.

Cases from other jurisdictions indicate that the covenantor is not liable for breaches of the covenant after he has parted with title to the property: see note at bottom of page.[3] Moreover, the assignee of a lease is not bound

---

[3] In Bolles v. Pecos Irrigation Co., 23 N. M. 32 (1917), while the facts are not as clear as could be, the court said: "Under these contracts it will be seen that appellant's (defendant's) predecessor in title was simply a carrier of a stated quantity of water for appellee's (plaintiff's) predecessors in title. . . . The Pecos Irrigation Company was not bound to retain ownership forever of the land upon which the canal was situate. We know of no doctrine of law which would impress this duty upon it. The proposition seems clear that the parties to these contracts did not contemplate that the covenantor should perpetually be required to perform the covenants therein expressed, regardless of the ownership of the canal. That they contemplated a possible change in ownership and hence a consequent shifting of the burden of performing the covenants therein expressed is clear beyond all question. . . . But the contracts negative all idea of casting upon the covenantor, personally, a perpetual duty by providing that the covenants therein contained were binding upon the 'successors' of the parties."

Hickey v. Ry. Co., 51 Oh. St. 40 (1894). The railroad deeded land to defendant Hickey. The covenant read "his heirs and assigns shall make and maintain good and sufficient fences on each side of the right-of-way . . . which condition and obligation shall be perpetually binding on the owners of the land." The fences along the line of the railway became out of repair. The court said: "Manifestly, it was not Hickey's intention to assume an obligation *in perpetuam* and, after having sold and conveyed the premises in fee, to remain bound for life, and his heirs to be bound after his death, to build and keep up the fences between the right-of-way and the land sold; and in getting at the intention of the railway company the obvious inference would be that the company would naturally provide for a recourse to those who might own the land at the time the fences needed repairing or rebuilding, rather than to its grantee and his heirs, who might, perhaps, at the time be dead, or unable to be found."

In Clark v. Devoe, 124 N. Y. 120 (1891), the covenant reads: "And the said Moses Devoe, being also the owner of the adjoining lot . . . for himself, his heirs, executors, administrators and assigns, does hereby covenant . . . that he will not erect, or cause to be erected, on said lot . . . any building which shall be regarded as a nuisance, or which shall be occupied for any purpose which may

by any stipulation which arises from the contract made by another but only for the liability arising from the privity of estate: Lowry v. Atlantic Coal Co., 272 Pa. 19.

We conclude that the covenantor of what may be termed an easement or a benefit attached to land is not liable after parting with his title for a breach occasioned by subsequent possessors of the land subject to the covenant.

Judgment reversed.

---

render it a nuisance." The covenant was breached while defendant was out of title and possession. Held, he was not liable. The court said: "We think that the covenant in question was personal to the defendant and was solely against his own acts; that it did not make him liable for the acts of his grantees or of the subsequent owners. . . .

"In construing the covenant, it is to be observed that the grantor, although speaking for himself and his successors, to the grantee and his successors, confined the restriction to himself alone, by agreeing that he, the grantor, would neither erect nor cause to be erected any building that should be regarded as a nuisance. According to the literal, and hence natural, interpretation of this language, the parties meant that the grantor should not personally do or cause to be done any of the inhibited acts."

In Sexauer v. Wilson, 136 Iowa 357, 14 L. R. A. (N. S.) 185 (1907), a covenant was made by the grantee to maintain perpetually a tight fence. The new grantee failed to repair. Held, the covenant ran with the land but that the covenantor, having sold his land, was not liable. The court said: "Having found that the covenantor's grantee is bound by the covenant, the next inquiry is whether the covenantor also is liable thereon subsequent to parting with the title. This necessarily depends on the intention of the party to the first deed. While the covenant is personal in form, this is not controlling, for the deed must have been executed with the understanding that Wilson, the grantee, would have no right to enter on the land after passing title to another in order to repair or replace the fence. . . . It could not have been his intention to assume an obligation in perpetuam, and, in the event of disposing of the fee, to remain bound for life."