## Wood *v.* Evanitzsky, Appellant.

124

Argued November 13, 1951.   Before DREW, C. J., STERN, STEARNE, BELL, LADNER and CHIDSEY, JJ.

*Gerald G. Dolphin,* with him *J. Wilson Ames,* for appellants.

*Leigh B. Maxwell,* for appellee.

OPINION BY MR. JUSTICE LADNER, December 27, 1951:

This is an appeal from the Superior Court pursuant to an order allowing the same.

The appellants are the defendants in a judgment entered by confession on a bond of $1,000 which accompanied a purchase money mortgage and the matter came before the court of common pleas on a rule to open judgment.

By a statutory form of deed dated May 27, 1947, plaintiff and his wife conveyed a farm to defendant and wife describing the same by metes and bounds with *general warranty*. The deed recited a consideration of $2,500 of which $1,000 was paid April 15, 1947, and $500 upon delivery of the deed together with a purchase money mortgage and aforesaid bond for the balance. There was no written agreement of sale but a receipt signed by the plaintiff was given for the first payment of $1,000. Prior thereto, viz., on February 21, 1947, the Governor had approved plans for the relocation of a state highway through the farm and on July 27th, after the property had been conveyed by plaintiff and his wife to defendants by the aforementioned deed the description of which included the bed of the relocated highway, the plaintiff executed a quitclaim deed to the Commonwealth and received $850 as damages for the land condemned by the Commonwealth.

The defendants claimed to be entitled to a credit against the purchase money mortgage for the $850 so received by the plaintiff from the Commonwealth. The common pleas court ruled that as the condemnation took place at the time the Governor approved the plans, under principles well settled by cases of which *Smith v. Commonwealth,* 351 Pa. 68, 40 A. 2d 383 (1945), is an example, the damages belonged to plaintiff. This is so even though the land is conveyed without reservation before payment of the damages: *Hunter v. McKlveen,* 353 Pa. 357, 45 A. 2d 222 (1946).

The defendants contended however, that since plaintiff had conveyed by metes and bounds the whole farm

without exception or reservation of what had been condemned by the Commonwealth they were entitled to recover under the covenants of their deed a sum equal to what the Commonwealth had paid their grantor. As to this contention, the learned court held, in substance, that a purchaser of property takes subject to visible notorious easements that exist on the premises and which are not made subject to an exception, a familiar principle laid down in a line of cases of which *Memmert v. McKeen,* 112 Pa. 315, 322, 4 A. 542 (1886), and *Eby v. Elder,* 122 Pa. 342, 15 A. 423 (1888), are examples. The court held the new highway as it had been staked out was sufficiently visible and defendants were bound by this principle. The rule to open judgment was accordingly discharged. Upon an appeal, the Superior Court, by the same line of reasoning affirmed saying in the course of its opinion, "They [defendants] examined the farm before buying it, and, in the language of the Memmert case [*Memmert v. McKeen,* 112 Pa. 315] p. 322, 'therefore took it with his [their] eyes open to the servitude.'"

The principles above referred to and learnedly discussed by the courts below may be conceded, but the question remains as to their proper application to the facts of this case which are unlike the facts of any of the cases relied on by the courts below. In all of those cases the servitude had long been in existence and plainly visible before the agreement of sale was entered into. Here it cannot be said with any degree of confidence that the relocated road was plainly visible or even indicated at the time the defendants agreed to purchase and paid the down money. Construction of the relocated highway was not commenced until thereafter.

We think the learned courts below erred in assuming that the controlling date at which the defendants

might be charged with knowledge of the relocated highway was *May 27, 1947*, when the deed and purchase money mortgage were delivered and balance of the purchase money paid. We are of the opinion, however, the controlling date is *April 15th*, when they agreed to buy the farm, paid $1,000 down and received plaintiff's receipt. The testimony shows that both defendants had inspected the farm a few days previously, between April 10 and April 15th, at which time the bargain was made. At that time no construction of the relocated road had been started. The only indication that a relocation might be in prospect was some old stakes which the wife defendant testified had been there for 3 years or more. This is confirmed by the testimony of the highway engineer that on April 10th only the original survey stakes were there, as they had been since 1940 or 1941, and that new stakes were customarily not put in until just before construction started. Also there was express testimony that when the purchase was being negotiated nothing was said by the plaintiff about a state highway going through the property. We do not think, in these circumstances, it can be said as a matter of law that the situation was so clear that defendants can be charged with the same knowledge of an easement as in a case where well defined, visible, notorious roadways or other physical encumbrances are apparent. None of the cases cited go that far. At most, the facts must be more fully developed and it should be for a jury to say what indications existed and what conditions were apparent that might charge the defendants *at the time the land was purchased* with the knowledge of the prospective servitude.

In applying the rule that the courts below relied on, we must not lose sight of its origin which is indicated in *Patterson v. Arthurs*, 9 Watts 152 (1839), where, at page 153, KENNEDY, J., said, "This is per-

haps the first instance in which it has been claimed, that a covenant on the part of the vendor, contained in articles of agreement for the sale of real estate, to convey the same *clear of all encumbrances,* or in a deed of conveyance, that the real estate thereby conveyed was *clear of all encumbrances,* embraced a public road or highway, in being, at the time, and previously, laid out, *opened and used,* through or over the estate. Believing that it has never entered the minds of the parties, when selling and buying lands in this state, to conceive that a covenant against encumbrances extended to public roads or highways, as such, and that the universal understanding of both sellers and purchasers has been in opposition to it, . . . we are convinced beyond all possible doubt, that there is no ground for holding the public highway on the lots in question to be an encumbrance within the meaning of the parties as manifested by the terms of their contract. Although a public highway no doubt is, in many instances, an injury instead of a benefit to the holder or owner of the land upon which it is located, and therefore tends to lessen its value in the estimation of a purchaser; yet it is fair to presume that every purchaser, before he closes his contract for his purchase of land, has seen it and made himself acquainted with its locality and the state and condition of it; and consequently, if there be a public road or highway *open and in use* upon it, he must be taken to have seen it, and to have fixed in his own mind the price that he was willing to give for the land, with a reference to the road, either making the price less or more, as he conceived the road to be injurious or advantageous to the occupation and enjoyment of the land." (Italics supplied.)

In the instant case at the time the contract to purchase was entered into the relocated highway was

neither open nor in use as in the cases relied on by the courts below.[1] Having then paid a considerable portion of the purchase money the defendants were not only committed to the purchase but they became equitable owners under the well settled principle that ". . . when an agreement is made for the sale of an estate, the vendor is considered as a trustee for the purchaser, of the estate sold, and the purchaser as a trustee of the purchase money for the vendor." *Kerr v. Day*, 14 Pa. 112, 114 (1850) ; *Dubin Paper Co. v. Ins. Co. of North America*, 361 Pa. 68, 78, 63 A. 2d 85 (1949).

What took place thereafter, viz., the removal of the barn or milk house and commencement of actual construction (much relied on by the courts below) could not change the rights which the defendants had already acquired. True, when they saw the construction started they might have elected to rescind the agreement of sale and recover their down payment or made a demand at settlement for diminution of the purchase price: *Merritz v. Circelli, et ux.*, 361 Pa. 239, 64 A. 2d 796 (1949). But they also had the right to accept a deed without reservations or exceptions of all they bought and rely on the general warranty to protect them against any encumbrance on the title.[2] Mere accept-

---

[1] It would be more accurate to say, all cases with the exception of *Ake v. Mason*, 101 Pa. 17, which is discussed in footnote 2, infra.

[2] *Ake v. Mason*, 101 Pa. 17 (1882), cited by the Superior Court, furnishes no real precedent to the contrary. There the street was merely plotted and not opened at either the time of purchase or conveyance. The condemnation in the *Ake* case did not take place until some three years after the conveyance of title so that the grantee there had his remedy against the condemning authority for damages at the time of the taking. The opinion discusses mainly the import of the covenant implied by the words, "grant, bargain and sell" which under precedents then prevailing were held to

ance of the deed without more would in the circumstances not of itself operate to waive the rights which a grantee normally might have to recover on grantor's covenants: *Wolbert v. Lucas*, 10 Pa. 73 (1848); *Hannan v. Carroll*, 277 Pa. 32, 120 A. 665 (1923). This would be a matter of proof at the trial.

Nor is the plaintiff in any better case if we view the situation as an encumbrance on the title arising from the Commonwealth's earlier condemnation February 21, 1947, before the contract of sale was made. Section 210 of the State Highway Law of June 1, 1945, P. L. 1242, as amended, 36 P.S. pocket part 670-210, in substance makes the approval by the Governor of the plans for relocation of a highway a condemnation of an easement for that purpose and requires the recording of the approved plan in the office of the Recorder of

---

amount merely to a special warranty and not a general warranty. The effect of the general warranty was not satisfactorily discussed, but the right of the grantee to recover from the state was expressly mentioned. It is to be noted also that the decision was by a divided court. Chief Justice SHARSWOOD and Justice TRUNKEY dissented and Justice PAXSON was absent. Since the decision was rendered it has never been cited by this court on the proposition here discussed and must, at best, be regarded as a doubtful precedent. *Peck v. Jones*, 70 Pa. 83, (1871), turned largely on the question of the sufficiency of the averments of an affidavit of defense. In that case also there was a mere plotting of the street at the time of the conveyance and defendant grantee had his remedy for damages against the municipality when the street was later opened. The opinion does say, "the actual opening of a public street or highway . . . would not . . . entitle the vendee to maintain an action for the breach of his covenant of general warranty" citing *Dobbins v. Brown*, 12 Pa. 75 (1849). But an examination of the *Dobbins* case shows that Chief Justice GIBSON treated the warranty there as a *special* warranty for he said at page 80, "An explicit covenant against all the world [i.e., a general warranty] would bind him [the grantor]; but the law is not so unreasonable as to imply it." *Peck v. Jones* likewise has never since been cited by this court on the proposition here discussed.

Deeds in the proper county. Assuming therefore the plan *was* recorded (though there is no testimony to that effect), so that the defendants were chargeable with constructive notice of that encumbrance on the title, they still would have the right to recover on the general warranty. Of course, it is true a purchaser is put on notice of all recorded liens and encumbrances (*Lance v. Gorman et al.*, 136 Pa. 200, 20 A. 792 (1890)) and it is his duty to examine the title about to be conveyed to him and point out to the vendor what liens or defects he demands removed, if he desires to rescind the agreement or have a reduction of the purchase price: *Espy v. Anderson*, 14 Pa. 308, 312 (1850). But failing in this, if he pays the purchase price in full and accepts a deed he cannot thereafter recover back the purchase money in absence of fraud or mistake. In short the law is that a vendee may *defend* an action brought for the purchase money by showing existing encumbrances or defects of title though he cannot on those grounds *recover back* the consideration money paid after conveyance made, unless there be fraud or a warranty: *Kerr v. Kitchen*, 7 Pa. 486 (1848). So even if the purchase money has been paid in full and the title proves defective in whole or part the grantee may recover on the covenants in his deed: *Fisk v. Duncan*, 83 Pa. 196, 197 (1876); *Wasserman v. Fleisher*, 249 Pa. 29, 94 A. 454 (1915).

In the case before us the purchase price has not been fully paid because a purchase money mortgage is regarded in law as security for payment of the balance: *Steinhauer v. Witman*, 1 S. & R. 437 (1815); *Cross v. Noble*, 67 Pa. 74, 78, (1870). In the latter case, Mr. Justice SHARSWOOD said at page 78, "Mr. Justice KENNEDY, in Roland v. Miller, 3 W. & S. 390, has stated the rule as it has always been understood and acted upon in this state. 'The doctrine of Steinhauer v. Witman

is, that if the consideration-money has not been paid, the puchaser, unless it plainly appear. that he has agreed to run the risk of the title, may defend himself in an action for the purchase-money, by showing that the title was defective, either in whole or in part, whether there was a covenant of general warranty or of right to convey or quiet enjoyment by the vendor, or not; and whether the vendor has executed a deed of conveyance for the premises or not:' Lloyd v. Farrell, 12 Wright 73; Weakland v. Hoffman, 14 Id. 513; Herrod v. Blackburn, 6 P. F. Smith 103; Dankel v. Hunter, 11 Id. 382." And what was there said was more recently quoted with approval in *Little v. Thropp*, 245 Pa. 539, 91 A. 924 (1914).

Therefore, it follows whether we view defendants' claim as one for the reduction of the balance of the unpaid purchase price to the extent that the consideration failed or as set off arising from the breach of the general warranty, they are entitled to have the judgment opened and be let into a defense.

The judgments of the Superior Court and of the Court of Common Pleas of Wayne County are reversed with a procedendo.