## Di Carlo v. Petrillo, Appellant.

Argued October 4, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*C. Francis Fisher*, with him *Brenlove, Fisher, Stein & Winters*, for appellants.

*James A. Ashton*, for appellee.

OPINION PER CURIAM, December 29, 1956:

The Order of the lower Court is affirmed on the following excerpts from the opinion of Judge LEWIS:

"The plaintiffs sought to restrain the defendants, the adjacent property owners, from using an easement over the property of the plaintiffs, alleging that the easement had been terminated.

"The plaintiffs also asked for damages, but the Chancellor found that no actual damage had been proved by the plaintiffs, and therefore, no money damages were awarded.

"There was a provision in the deed to the plaintiffs' property, which adjourned that of the defendants, to the effect that the defendants were permitted to use an auto ramp crossing over the plaintiffs' land 'so long as the second floor of (the defendants' building) is used and occupied as a garage or place for keeping and storing of automobiles.'

"It was the contention of the plaintiffs that the easement had terminated when one of the defendants, Eugene Petrillo, on April 9, 1952, leased the second floor of the dominant property to Tracey Daniels, Inc. as a manufacturing plant. The aforesaid company was engaged in the manufacturing business which had no connection whatsoever to the operating of a garage or the storing of automobiles.

"Both the plaintiffs and the defendants agree that the easement was a determinable one.

"The question before the Chancellor was whether or not the evidence was sufficient to establish the fact that the easement had terminated.

"After hearing the witnesses for both sides, studying the language used in the deed, and listening to the arguments of counsel for both parties, the Chancellor concluded that the easement contemplated the use of the second floor of the dominant property as a commercial garage or a place for the storing of automobiles, and that such use had ended when Tracey Daniels, Inc. entered into possession of the second floor and established their manufacturing plant. Therefore, the Chancellor, concluded that the rights in the easement over the property of the plaintiffs had terminated.

. . .

"It was clear from the testimony that during the time Tracey Daniels, Inc. was in possession of the second floor of the building, that it was used exclusively for manufacturing purposes, and that one or two cars from time to time might have been stored on the second floor.

"It was clear that when the lease was signed with Tracey Daniels, Inc. the second floor was not used as a commercial garage.

"The testimony was also clear that some time after Tracey Daniels, Inc. had leased the second floor and the question was raised as to whether or not the easement had been terminated by use other than a commercial garage, the defendants attempted to induce Tracey Daniels, Inc. to relinquish half of the second floor to permit the storage of cars in the other half of the second floor.

"The essential difference in the interpretation of the law in connection with the instant case between the plaintiffs and the defendants centers around the interpretation of the language of the easement.

"The defendants contend that when the grantor of the easement used the word 'garage' he merely meant any form or type of garage, and that by simply using the second floor as a garage for the storage of one car, the easement could be maintained.

"The plaintiffs argue that the intent of the parties to the easement must be found by reading the entire easement in the light of the circumstances surrounding the grant when it originated, and they argue that, because at the time of the original grant, there was a commercial garage on the second floor of the dominant property, the easement meant commercial garage.

"With this contention of the plaintiffs, the Chancellor agreed, and we are of the opinion that his conclusion was a sound one.

"At the time the easement was granted, the second floor of the dominant property was being used by the defendant Eugene Petrillo as an integral part of a garage business he conducted on the premises. He was engaged in operating a commercial auto agency. He stored and repaired cars on the second floor. The grantor was aware of all of this.

"When the easement was granted, the grantor inserted words which indicate what was meant by the word 'garage'. In the first paragraph of the reservation, it is stated that the easement is granted for a ramp 'to the second floor of the building erected upon the property herein conveyed, now used as a garage and a place for the keeping and storing of automobiles'.

"It would seem clear from this that the parties contemplated by the use of the word 'garage' that type of garage being operated on the premises at the time the deed was executed. This was the conclusion of the Chancellor, and the court en banc agrees with this conclusion.

"In construing the intention of the parties, a court should look to the object of the parties, their purpose, and the conditions existing when the deed was made. Murphy vs. Ahlberg, 252 Pa. 267. [*Baederwood, Inc v. Moyer*, 370 Pa. 35, 87 A. 2d 246; *Price v. Anderson*, 358 Pa. 209, 56 A. 2d 215].

. . .

"Therefore, we are of the opinion that the decision of the Chancellor was warranted by the credible evidence produced and by the law as it pertains to this case."

Costs shall be paid by appellants.