Leh et al. *v.* Burke et al., Appellants.

Argued September 13, 1974.   Before WATKINS, P. J.,
JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and
SPAETH, JJ.

*Jacob S. Kolb,* with him *Kolb, Holland, Antonelli & Heffner,* for appellant, at No. 912.

*Henry S. Perkin,* with him *Frederick N. Nabhan,* and *Nabhan & Nabhan,* for appellants, at No. 940.

*Arthur T. Gillespie, Jr.,* with him *William F. Kocher, Jr.,* and *Gillespie & Gillespie,* for appellees, at Nos. 912 and 940.

OPINION BY JACOBS, J., December 11, 1974:

This appeal concerns a covenant in a deed from the plaintiffs Leh Brothers to the additional defendant Margaret Michell requiring the grantee and her assigns to pay a proportionate share of the expenses incurred in paving a road abutting the property conveyed. We conclude that Mrs. Michell's subsequent grantees, the Burkes, are bound by the covenant by virtue of their ownership of the abutting parcel of land at the time the road was constructed and therefore must pay the assessment. We find that appellant Mrs. Michell, however, who had transferred title and parted with all interest in the property prior to the commencement of construction, cannot be held liable for any of the costs assessed.

The transactions between the parties to this appeal appear from the record as follows: Plaintiffs-appellees compose a partnership, Leh Brothers, which engages in the business of developing land. On May 8, 1961, Leh Brothers conveyed a parcel of land, part of a larger tract destined for further subdivision, to Mr. and Mrs. Michell by general warranty deed. The deed indicated that the parcel was composed of two lots, or purparts, both being distinctly described in the deed. Purpart number one consisted of the southern half of the parcel

and purpart number two the northern half. The deed pictured the entire property as being bounded on the east by Bandbury Road, which was in existence on the date of the transfer to the Michells, and on the north by Greenwood Road, which although proposed was not constructed at that time. Due to the division of the property only purpart two actually fronted on the area reserved for the proposed Greenwood Road. See appendix.

Following the description of purpart one there is included in the deed a list of lettered paragraphs defining the building restrictions to which the property was made subject and two unlettered paragraphs reserving a right of way for Tuck Drive, a roadway along the southern boundary of the property, and an easement for utility lines. The description of purpart two is also followed by a lettered list of 5 building restrictions, virtually identical to the prior list, and an unlettered paragraph providing "[i]n the event that the surface of Greenwood Road North should ever be paved, or in the event that water lines should be placed thereunder, the Grantees, their heirs or successors in title, shall bear their proportionate share of the expense of such improvements." The deed was immediately recorded.

Subsequent to the death of Mr. Michell, Margaret Michell conveyed the two lots separately, purpart one being conveyed to Mr. and Mrs. Lamparelli and purpart two to Mr. and Mrs. Burke. Both deeds were specially warranted, both contained the description of their respective lots and referred to the recorded Leh-Michell deed. Neither deed contained any reservations or restrictions such as those in the prior deed, nor was there any mention of the covenant to share the expense of the road construction. The Burkes received their lot as part of a land trading arrangement which was negotiated through another individual. Consequently they did not deal directly with Mrs. Michell nor were they represent-

ed by their own attorney. The Burkes, therefore, never searched their title and never knew of the covenant or any of the other restrictions in their deed. The Lamparellis were informed by their attorney of those restrictions and reservations specifically affecting their own lot, including the easement for Tuck Drive, but they also were unaware of the covenant concerning the construction of Greenwood Road.

After Margaret Michell had conveyed away all her interest in the original parcel, Leh Brothers began to take steps to begin construction of Greenwood Road. The Burkes were apprised at various stages of the progress of the plans. Eventually a road was completed meeting the township's requirements and the Burkes were given notice of their share of the cost. Upon their refusal to pay the amount attributed to them, Leh Brothers instituted suit against both the Burkes and the Lamparellis. Margaret Michell was joined as an additional defendant by the original defendants. The case was heard by a judge without a jury who found for plaintiffs Leh Brothers against the Burkes in the amount of $3,855.20. It was further found that the defendant Burkes were entitled to recover any sums paid on the judgment from the additional defendant Margaret Michell. Finally, the court found in favor of the defendant Lamparellis. Exceptions filed by the Burkes and Mrs. Michell were dismissed by the court en banc and both parties appeal.

On appeal the Burkes' first contention is that the covenant is unenforceable against them because its terms are so vague and undefined as to render reasonable interpretation and a fair assessment of damages impossible. It is maintained that the requirement of the covenant that the grantees pay their proportionate share of the cost of paving the surface of the road is ambiguous since all the necessary factors of the job are not specified and the method of determining the apportionment

of costs is not expressed. However, imprecision is not fatal to a covenant in a deed. *See, e.g., Mishkin v. Temple Beth El,* 429 Pa. 73, 239 A.2d 800 (1968); *Di Carlo v. Petrillo,* 387 Pa. 212, 127 A.2d 657 (1956). The rule is that if an agreement is not clearly expressed, an effort is made by the court interpreting the language to give effect to the intention of the parties as expressed at the time. "Where the language of a deed or a restriction is not clear, then in order to ascertain the intention of the parties its language should be interpreted in the light of the subject matter, the apparent object or purpose of the parties, and the conditions existing when it was made." *Parker v. Hough,* 420 Pa. 7, 12-13, 215 A.2d 667, 670 (1966).

Viewing the conditions as they existed at the time the original parties entered into the covenant, it is apparent that the grantor Leh Brothers intended to develop the as yet unimproved tract of land wherein the Michells purchased their parcel. The language in the deed clearly indicates that the parties intended to share the cost of those improvements which would benefit the abutting land when they were constructed some time in the future. At the time the agreement was made it was impossible for the parties to state with specificity the details of construction that would be required to pave a new road and put in water lines. We do not at this time demand such details in order to enforce the covenant that was made. The fact that the covenant refers only to paving the surface of Greenwood Road and placing water lines thereunder does not exclude from the parties' contemplation the cost of engineering the new road, clearing the land, or laying the base of the road. It was obvious at the time that no road existed on the 50 foot right-of-way designated in the recorded plan for the development. The only reasonable interpretation of the agreement to pave the nonexistent road would be to include the related costs of construction. Further-

more, we do not believe that the construction of a 30 foot wide roadway, when all the pre-existing roads in the area were only 20 feet wide, is inconsistent with the parties' intentions as expressed in the covenant. The road was constructed according to specifications required by the township, and Leh Brothers acted reasonably to protect the interests of all parties by building the most inexpensive road possible that would still comply with the township standards.

The Burkes also complain that their proportionate share of the cost of the road cannot be fairly ascertained. Although the covenant does not specify how the proportionate share is to be determined, the lower court arrived at a percentage based on the ratio of the subject property's abutting footage to the total frontage along the new road. This method was not objected to at trial by any of the defendants and it is a reasonable, objective means of arriving at a proportion which would implement the parties' intent as expressed in the covenant.[1] This percentage was applied only to the cost of those improvements expressly mentioned in the covenant: the paving of Greenwood Road, including related engineering, clearing and grading costs, and the installation of water lines. Other expenses which were not connected with either the paving or the water lines, such as the

---

[1] The foot-front rule has been one of the methods traditionally used to determine assessments by municipalities for public improvements. Where population is relatively dense and concentrated on small lots rather than on large tracts of rural acreage, it has been seen as a "fairly approximate and just measure of such benefits." *McKeesport v. Soles*, 165 Pa. 628, 630, 30 A. 1019 (1895). It is the function of the finder of fact to determine whether the area is such that use of the rule would fairly apportion costs among the property owners to be benefited by the improvement. For some cases dealing with the right to adopt the foot-front rule as a measure in assessing the cost of street improvements in Pennsylvania, see *Harrisburg v. McPherran*, 200 Pa. 343, 49 A. 988 (1901); *Township of Mt. Lebanon v. Robinson*, 83 Pa. Superior Ct. 539 (1924).

construction of storm sewers and curbing, even though these improvements were required by the township in order to construct the road, were carefully and correctly excluded by the trial judge in determining the defendants' fair share of the costs. *See Maher v. Cleveland Union Stockyards Co.,* 55 Ohio App. 412, N.E.2d 995 (1936). We endorse the determination of damages made by the trial judge as accurately reflecting the proportionate share of the road costs that should be borne by the property owner.

Appellants Burkes next contend that the covenant should be enforced against the Lamparellis equally with themselves. Once again we must look to the deed to ascertain whether it was intended that the property purchased by the Lamparellis would be bound by the covenant. It is immediately apparent from the deed that although the parcel conveyed to the Michells was purchased as one piece, it was recognized by all the parties, and treated in the deed, as two lots. The property is described as two purparts, each numbered and followed by the metes and bounds description. Building restrictions and conditions, although substantially identical for each purpart, are recited separately under the descriptions. Following the restrictions common to both purparts there are two paragraphs defining additional reservations under purpart number one, the lot ultimately sold to the Lamparellis, regarding easements for an abutting street as yet unconstructed. In the same place under purpart number two, the lot sold to the Burkes, appears the covenant with which we are here concerned, regarding paving the road abutting the Burkes' lot. The best possible reason for so structuring the deed would be to make clear that the lot fronting on Greenwood Road was alone liable for sharing the cost of its construction. This is not only the most reasonable way to interpret the deed but it also seems to be the way the parties themselves understood it. Upon purchasing

their lot, the Lamparellis were informed by their attorney who searched their title about the easements for the abutting street, Tuck Drive, but not about the covenant. The Leh Brothers, when constructing the road, repeatedly consulted with the Burkes and kept them informed of progress and costs, but never discussed the matter with the Lamparellis. The costs assessed to the property were presented to the Burkes, but not to the Lamparellis until it was apparent the matter was going to court. Considering the arrangement of the terms of the deed, it is clear that the parties' understanding of the deed is the way it was intended to be understood and that the Lamparellis' lot is not bound by the covenant.

Having decided that the covenant is enforceable against the abutting lot presently owned by the Burkes, it is necessary to establish which of the parties is ultimately responsible for making the payments required by the covenant. It is apparent from the wording of the covenant that it was intended to run with the land rather than bind the parties personally to its dictates. The specific statement in the deed is that ". . . the Grantees, their heirs or successors in title, shall bear their proportionate share of the expenses of such improvements." Since the test for determining whether the promise runs with the land is whether it was so intended by its creators, *J. C. Grille, Inc. Liquor License Case*, 181 Pa. Superior Ct. 456, 124 A.2d 659 (1956), an indication that the grantees' heirs or assigns are considered bound by its terms is generally decisive of the question.[2] The agreement therefore does not create a

---

[2] *See* 5 Powell on Real Property ¶673 at 166 for a discussion of wording generally considered to import a devolutive intent. *See also Goldberg v. Nicola*, 319 Pa. 183, 178 A. 809 (1935). For cases in other jurisdictions where similar covenants apportioning costs for improvements were found to run with the land, see *Hughes v. City of Cincinnati*, 175 Ohio St. 381, 195 N.E.2d 552 (1964); *Stephens Co. v. Lisk.*, 240 N.C. 289, 82 S.E.2d 99 (1954).

personal liability in the original grantee but follows possession of the land and ". . . the person liable for a breach of the covenant is the one in possession at the time the breach occurs." *Goldberg v. Nicola,* 319 Pa. 183, 188, 178 A. 809, 811 (1935).

When a promise to do an affirmative act, such as in this case to make a monetary payment, is found to run with the land, the person in possession at the time the obligation matures is responsible for discharging it. Conversely, prior or subsequent owners of the property, including the original covenator, are relieved of responsibility not arising contemporaneously with their interest in the land. "It has long been the law of this Commonwealth that 'the covenantor of . . . an easement or a benefit attached to land is not liable after parting with his title, for a breach occasioned by subsequent possessors of the land subject to the covenant.' Goldberg v. Nicola, 319 Pa. 183, 191, 178 A. 809 (1935). As the Supreme Court stated 'while on the land both covenantor and covenantee, with their respective assigns, had a substantial interest in the life of the covenant. When either parted with the title he parted with that interest. The one thus separating himself from the land could not enter the aliened premises to prevent a breach, he could enjoy no benefit from it, nor could he perform the covenant. It was so intended by the parties and was effective alike on covenantor and covenantee. The interest thus created was centered in or attached to the land itself, for the benefit of the other parcel. When the person divested himself of title, he transferred to his grantee the same right in the covenant that he possessed, with the same obligation imposed. There was never any intention to impose personal responsibility apart from privity of estate, or to enter into an engagement on personal credit. On the contrary, there was set up a contract operative and binding upon owners and future owners of the land as long as privity of es-

tate lasted between them.'" *Kellogg-American Realty, Inc. v. S. Co., Inc.,* 214 Pa. Superior Ct. 489, 491-92, 257 A.2d 610, 611-12 (1969), *quoting from Goldberg v. Nicola,* supra at 186-87, 178 A. at 810.[3]

In spite of this long standing principle of law, the Burkes maintain that should they, as present owners of the property have to discharge the covenant, they are entitled to receive any amount thus expended from their grantor, Mrs. Michell. To support this position, they contend that by virtue of the conveyance Mrs. Michell was required to transfer the property free and clear of any liens or encumbrances, that this covenant constitutes an encumbrance on the land and that she, the grantor, must remove it under the terms of the conveyance. With this contention we disagree.

Initially we note that the original Leh-Michell deed containing the covenant and other restrictions was properly recorded. The deed from Mrs. Michell to the Burkes, although failing to reiterate the covenant, made specific reference to the prior recorded deed. There was no agreement of sale between the parties requiring the grantor to discharge any lien or encumbrances, known or unknown to the grantee. In such a case a grantee is presumed to be on notice of any features of the con-

---

[3] For further discussion of this principle applied to a case where the parties agreed to maintain a bridge mutually beneficial to all the properties bound but not physically located on any property, see *Conti v. Duve,* 142 Pa. Superior Ct. 189, 15 A.2d 494 (1940), where this Court said, "[b]ut as his liability grows out of privity of estate, it ceases when the privity ceases. If he has assigned before the time for performance, his liability would have ceased with his title, and liability would have attached to his assignee . . . . Each successive assignee would be liable for covenants maturing while the title was held by him because of privity of estate; but he would not be liable for those previously broken, or subsequently maturing . . ." at 193, 15 A.2d at 495, *quoting from Washington N. Gas. Co. v. Johnson,* 123 Pa. 576, 591-92, 16 A. 799, 801 (1889).

veyance which he might find objectionable[4] and settle the matter with his grantor prior to the transfer. ". . . [I]t is true a purchaser is put on notice of all recorded liens and encumbrances and it is his duty to examine the title about to be conveyed to him and point out to the vendor what liens or defects he demands removed . . . ." *Wood v. Evanitzsky,* 369 Pa. 123, 131, 85 A.2d 24, 28 (1951) (citations omitted). If he fails to make the objection and the transaction has been completed, the grantee may still recover but he is limited to the warranties made in his deed. *Wood v. Evanitzsky,* supra.

The deed between Mrs. Michell and the Burkes contains a covenant of special warranty. Under this warranty, the grantor agrees to defend the title to the property against any adverse claimant with a superior interest in the land claiming through the grantor. The warranty is not breached by the existence of liens or encumbrances on the property since it protects only the title. *Bloshinski v. Falaz,* 168 Pa. Superior Ct. 565, 79 A.2d 798 (1951).[5] The grantee is protected against encumbrances created or allowed by the grantor by the expression "grant and convey" contained in the deed. By statute, this language creates an express covenant "[t]hat the grantor was seized of an indefeasible estate in fee simple, freed from incumbrances done or suffered from the grantor . . . ." Act of May 28, 1715, 1 Sm.L. 94, §6, 21 P.S. §8. "This covenant is breached if there is an existing encumbrance created by the grantor at the time the deed is delivered." *Litmans v. O'Donnell,* 173 Pa. Superior Ct. 570, 574, 98 A.2d 462, 464 (1953). Therefore, in order to recover against their grantor under the warranty in their deed, these grantees must show that Mrs. Michell caused or allowed a lien

---

[4] Act of April 24, 1931, P.L. 48, No. 40, §2, 21 P.S. §357.

[5] *See* Act of April 1, 1909, P.L. 91, §5; Act of April 30, 1925, P.L. 404, §5, 21 P.S. §6.

or encumbrance to burden the land at the time of the transfer.

The court below was of the opinion that the covenant to pay proportionate costs for the road construction constituted an encumbrance which was created by the grantor by virtue of her receipt of a deed in which the covenant was first expressed. Encumbrance is a broad term and has been defined as " 'every right or interest in the land which may subsist in third persons to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance.' " *Ritter v. Hill*, 282 Pa. 115, 118, 127 A. 455, 456 (1925), *quoting from Lafferty v. Milligan*, 165 Pa. 534, 537, 30 A. 1030, 1031 (1895). It may be either "one which affects the physical condition or use of the property, or one which affects the title of the property." *Ziskind v. Bruce Lee Corp.*, 224 Pa. Superior Ct. 518, 521, 307 A.2d 377, 379 (1973). Examples of encumbrances have been said to include assessable benefits which have not yet become liens, *Ritter v. Hill*, supra, as well as easements for roads not yet opened, *Wood v. Evanitzsky*, supra, a requirement that a wall be erected and maintained at the owners' expense, *Cohen v. Turner*, 90 Pa. Superior Ct. 255 (1926), and municipal claims for paving abutting roads. *Barlett v. Beverly School Land Co.*, 170 Pa. Superior Ct. 307, 85 A.2d 873 (1952).

Whether or not the present covenant constitutes an encumbrance depends upon determining if a third person, by reason of the covenant, had an interest in the property at the time of conveyance sufficient to bring it within the terms of this general definition. The covenant itself is couched in conditional language: "[i]n the event that the surface of Greenwood Road North should ever be paved . . . ." At the time the initial deed with the covenant was drawn, space for the anticipated road had been reserved on the plan of the Leh Brothers tract but the date for its construction was unspecified.

When the property was transferred to the Burkes, the situation was unchanged. Only after the Burkes were in possession and Mrs. Michell's interest in the property was wholly terminated were any motions made toward realizing the contemplated construction. The road itself did not infringe physically on the subject property, and the claim for payment has not become a lien against the land.

Improvements in the nature of unopened roads to be constructed after the grantee has come into possession of the land have been viewed as encumbrances when they constitute easements over the property and consequently are actually constructed on land thought to belong solely to the grantee. *Wood v. Evanitzsky,* supra; *Ritter v. Hill,* supra; *Ziskind v. Bruce Lee Corp.,* supra. However, in *Gilham v. Real Estate Title, Ins. & Trust Co.,* 203 Pa. 24, 52 A. 85 (1902), where the improvement, a water line, was constructed off the property in question and the property was not to be charged with its share of the cost of construction until connection was made with the pipe, there was found to be no encumbrance on the land. This case has been cited for the principle that a claim against the land conditioned on a future event, e.g., election to connect or changed conditions requiring connection with the improvement, "is not a lien or incumbrance on the title since it will come into existence only if, in the future, dwelling houses or other structures are erected on the premises and connections with the sewer are actually made." *Merritz v. Circelli,* 361 Pa. 239, 246, 64 A.2d 796, 800 (1949). *See also Boardman-Smith Corp. v. Sherman,* 176 Pa. Superior Ct. 302, 107 A.2d 202 (1954); *Perkinpine v. Hogan,* 47 Pa. Superior Ct. 22 (1911).

We cannot agree with appellants Burkes that the facts in the present case resemble an easement for a public road. The road was not constructed over the land belonging to the Burkes, and the claim for payment

arising after the construction cannot be likened to a present easement for actual use by the public of a portion of the property. Assessments for improvements arising after the grantee is in possession more closely resemble the *Gilham* case and those following it. In the present case, as in *Gilham*, the assessment could not be made until or unless a future condition occurred: construction of the road or connection with the improvement. Therefore, the claim could not exist at the time of the transfer. Also, in both cases, the grantor sought to be charged was not responsible for the condition giving rise to the claim. Mrs. Michell neither caused the road to be constructed at the time the Burkes were in possession nor failed to pay any claim made against the land while she held title. The only distinguishing feature between the cases is that the grantee in the present case cannot at his own election avoid the condition giving rise to the charge. Whereas this is a material distinction we do not believe it is sufficiently controlling on the other elements of the decisions to cause us to find that the present covenant constituted an encumbrance at the time of the transfer to the Burkes.

Appellant Michell's position that the covenant was not an encumbrance "done or suffered from the grantor" is further strengthened by decisions involving municipal assessments for improvements against abutting property owners. Early decisions held that where the lien or charge for these improvements was inevitable, even though not yet fixed in amount, the land was encumbered, and the grantor was responsible for indemnifying his grantee. A lien was thought to be inevitable although no assessment was yet made when the construction of the improvement was at least commenced before the transfer. *Lafferty v. Milligan*, 165 Pa. 534, 30 A. 1030 (1895); *Shaffer v. Greer*, 87 Pa. 370 (1878). In the present case, work was not begun until well after the transfer.

Any dispute as to the responsibility of the seller and buyer of benefited real estate for municipal claims is now settled by statute. The Act of May 16, 1923, P.L. 207, §9, *as amended,* 53 P.S. §7143 provides "[i]n case the real estate benefited by the improvement is sold before the municipal claim is filed, the date of completion in [the certificate of the . . . officer supervising the improvement] shall determine the liability for the payment of the claim as between buyer and seller, unless otherwise agreed upon." More recent decisions following this statute have held that there can be no encumbrance on the land where the assessment is not yet made, thus when the construction has not yet been completed, or even begun, no encumbrance exists which the grantor is obligated to discharge. *Moore v. Beattie,* 5 Pa. D. & C.2d 739 (Cumb. Co. 1955) ; *Estate of Trosino,* 17 Som. L.J. 110 (Pa. C.P. 1954).[6]

In view of these decisions and the statute it is apparent that liability for the assessment in the present case should in all logic and fairness be placed on the grantees Burkes. They were on notice by virtue of the recorded deed of the possible upcoming assessment and they alone will receive the benefits of the abutting road and water line. Mrs. Michell had no way of knowing a claim was being made against the property in which she no longer had any interest. She could no more see to the satisfaction of this claim than she could see that the Burkes complied with the building restrictions also present in the deed. For these reasons we find that the Burkes alone are responsible for the payment of the claim against the property.

The order of April 2, 1974, is reversed insofar as it holds that Ronald K. Burke and Dorothy J. Burke are

---

[6] For cases dealing with liability with respect to improvement assessments or charges as between vendor and purchaser, see *Annot.,* 59 A.L.R.2d 1044 (1958).

entitled to recover from the additional defendant Margaret B. Michell any sums paid to the plaintiffs-appellees Leh Brothers. In all other respects it is affirmed.