**UNITED STATES of America, Plaintiff,**

**v.**

**CITY OF PITTSBURGH, Defendant,**

**v.**

**COUNTY OF ALLEGHENY and United States Government, Department of Army Reserve Center, Third-Party Defendants.**

Civ. No. 81–2175.

United States District Court,
W.D. Pennsylvania.

Jan. 28, 1983.

Judith Giltenboth, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

D.R. Pellegrini, City Sol., Zan I. Hodzic, Asst. City Sol., Pittsburgh, Pa., for City of Pittsburgh.

James H. McLean, County Sol., W.J. Helzlsouer, Asst. County Sol., Pittsburgh, Pa., for Allegheny County.

Sheila M. Ford, Deputy Atty. Gen., Com. of Pa., Pittsburgh, Pa., for the Com. of Pa.

## OPINION AND ORDER

TEITELBAUM, Chief Judge.

The United States of America on behalf of the Veterans' Administration, initiated this suit in December of 1981 against the City of Pittsburgh alleging a breach of contract. The United States averred that a contract between it and the City required the City to maintain and repair, when necessary, an access road to the Veterans' Administration medical facility in Pittsburgh. The United States also asserted that the access road is in need of repairs and that the City has refused to make the necessary repairs.

The City does not deny that the road in question needs repairs but asserts that it is no longer liable to make the repairs. The City contends that when it entered the agreement with the United States it was the owner of an adjacent parcel of land over which the access road was to be constructed; that after entering the agreement with the United States, that parcel, including the access road, was conveyed to the Commonwealth of Pennsylvania by deed of gift; and, that the obligations to maintain and repair the road passed to the Commonwealth as part of that deed. In the alternative, the City avers that the access road in question is a private street and that obligations to maintain and repair rest with the landowners who border the road. Finally, the City asserts that the statute of limitations for breach of the contract has expired.

Consistent with its contentions the City filed a third party complaint against the Commonwealth of Pennsylvania alleging that the Commonwealth by virtue of the deed from the City was liable to the City if the City were liable to the United States. The City also asserted that the Commonwealth, in the capacity of landowner bordering the road, was liable to the City if the City were liable to the United States. The City also joined the County of Allegheny and the United States Government, Department of Army Reserve, the other landowners bordering the road, as third-party defendants.

The Commonwealth moved to dismiss the action against it relying on the Eleventh Amendment. By order dated May 13, 1982, that motion was granted. The City filed an appeal on June 10, 1982. On September 15, 1982, Judge Gibbons of the United States Court of Appeals for the Third Circuit signed an order dismissing that appeal. The mandate issued on October 7, 1982. After the order dismissing the appeal was signed but before the mandate was issued, the United States filed a motion for judgment on the pleadings, or in the alternative for summary judgment and to dismiss the third party complaint against the Army Reserve Center and the City filed a motion for judgment on the pleadings or for summary judgment for failure to join an indispensable party. These motions were denied for want of jurisdiction.[1] Subsequently, the United States and the City renewed their motions.[2] In addition the City has moved for summary judgment and the County has moved for summary judgment. These motions have been briefed and are now ripe for disposition.

The parties agree that in 1950 the United States and the City entered into an agreement which provided *inter alia* that the

---

1. After a notice of appeal is filed and until a mandate is issued by the Court of Appeals, jurisdiction over the case is vested exclusively in the Court of Appeals. Moreover, a district court generally has no means to monitor at what stage an appeal is pending. For this reason, this Court was unaware that a motion to dismiss the appeal had been filed by the parties and was further unaware of Judge Gibbons' order of September 15, 1982.

2. The United States renewed its motion on October 1, 1982, several days before the mandate issued. By that time, this Court had learned that Judge Gibbons had signed an order dismissing the appeal. Recognizing the likelihood that a mandate would issue shortly, this Court delayed action on the renewed motion. No party has asserted that the renewal of the motion should be deemed a nullity because it was filed before the mandate issued. This Court perceives no prejudice to any party by its consideration of this motion in light of the extensive opportunity afforded to brief the issues raised in that motion.

City would maintain and repair the access road in question. In 1956, the City conveyed property on which a portion of the access road was constructed to the Commonwealth. This deed makes no mention of the access road nor the obligation to maintain and repair it. The records before this Court suggest that the United States was not asked to be nor did it become a party to that deed.[3] The City takes the position that the obligations in the 1950 agreement between it and the United States run with the land and so passed to the current landowner, the Commonwealth. It is of course possible for an obligation to expend money to run with the land. *See* e.g. *Leh v. Burke,* 231 Pa.Super. 98, 331 A.2d 755 (1974) (promise to pay construction costs of road, runs with the land) and *Cohen v. Turner,* 90 Pa.Super. 255 (1926)[4] (covenant to erect and maintain wall runs with land). Merely because it is possible, does not make it so. The test for determining whether the promise runs with the land is whether that was the intention of the makers. *DeSanno v. Earle,* 273 Pa. 265, 117 A. 200 (1922); *J.C. Guille, Inc. Liquor License Case,* 181 Pa.Super. 456, 124 A.2d 659 (1956); and, *Leh v. Burke, supra.* Thus the question for this Court is what was the intention of the parties to the 1950 agreement.

■ Upon review of the 1950 agreement it appears to this Court that the obligation to maintain and repair the road does not run with the land but is a personal obligation of the City. Two significant features of the 1950 agreement point to this conclusion.

First, the City acknowledged receipt of the benefits flowing from the location of the Veterans' Administration facility as part of the consideration of the contract. This form of consideration is inconsistent with the activities of private profit seeking individuals and suggests instead the actions of an entity seeking to maximize the common good. Since governmental entities seek to improve the flow of benefits to all its citizens, the Court is persuaded that the City did not sign the agreement with the United States merely as a landowner who coincidentally was a governmental entity, but rather primarily signed in its capacity as a governmental entity. Because the status of the City as a governmental entity appears to have played a role in the formation of the agreement, obligations assumed by the City would likely have been considered by the makers as personal to the City and not as obligations running with the land.[5]

More important than the consideration it acknowledged in indicating that the obligations assumed by the City are personal is the nature of the obligations assumed. While generally the obligation to maintain and repair a roadway could be assumed by any landowner, the remaining obligations of the City assumed in the 1950 agreement could only be performed by the City. These obligations, to provide water and sewage service, are in the urban setting, peculiarly municipal functions. Reading the agreement as a whole it is likely that the parties viewed the maintenance and repair of the access road as another incident of municipal services to be provided by the City's Public Works Department. This construction of the agreement is further indicated by the signature of the Director of Public Works for the City on the agreement, in addition to that of the Mayor of the City. While the

---

3. The 1950 agreement provides that no modification of the agreement will be effective until approved by both parties.

4. Citation is made only to Pennsylvania law. The parties have not suggested that federal common law rather than Pennsylvania law should apply. Even had such a suggestion been made the Court is unaware of any significant difference in law which would affect the outcome of this case.

5. Usually the status of parties to a real estate contract is irrelevant and this fact can be ascertained by the presence of words of inheritance. In the instant agreement, however, there are no words of inheritance. While the Court declines to hold that the absence of such words inevitably indicates that the obligations are personal, had such words been present the City's assertion that the obligations run with the land would have rested on a surer footing.

agreement undoubtedly does establish easements that run with the land, for the water and sewer line and the access road, the continuing services embodied in that agreement including repair and maintenance of the access road appear to be personal to the City.

■ Having rejected the principal defense offered by the City it is necessary to only briefly consider the City's remaining contentions.[6] The City asserts that in 1962–63 a disagreement developed between it and the United States concerning the 1950 contract. The City asserts there was a breach of the contract and the statute of limitations has now expired. The Court notes that the facts and ultimate resolution of this disagreement are in dispute. If such facts were material, this Court could not now grant summary judgment. However, these facts are not material for it is uncontroverted that in 1964 the City and the United States entered into an agreement amending the 1950 agreement. This amendment, incorporating the entire 1950 agreement, constitutes reaffirmation by the City of its obligations.

The City also asserts that in 1975 the United States was informed the City declined jurisdiction over the access road. However, that incident relates to a request by the officials of the Veterans' Administration to rename the access road. The City's response that it had no jurisdiction to approve or withhold approval of a name change is so remote from its obligation to maintain and repair that it is wholly irrelevant to this case.

■ Finally, the Court must consider the motions of the third-party defendants; the United States Government, Department of Army Reserve Center and Allegheny County; for judgment in their favor on the third party claims made by the City. The City maintains that these entities own land near the access road and use the access road for ingress and egress to their property. The City maintains that this use obligates these entities to contribute in whole, or in part, for the maintenance of the road. While the City's position might have some merit were it advanced by a private entity, the importance of the City's status as a municipality to the 1950 agreement precludes its claims for indemnity or contribution. Because the City acted on behalf of the public to secure benefits for the public, this Court determined that in signing the 1950 agreement the City acted in its capacity of a municipality. The action of a municipality to provide a passageway for the benefit of its citizens to a facility whose location within the City limits is a benefit to the City's residents is the equivalent of recognizing the passageway as a public street.[7] In concluding that the access road has become a public street, the City no longer may shift the expense of maintenance to adjacent landowners for the City is now the representative of the beneficial users, the public.

Because the central dispute in this litigation was whether or not there was an obligation to repair the access road by the City, and not how such repairs should be performed, it appears sufficient to grant a declaratory judgment rather than a complex injunction detailing how and when repairs should be effected. An appropriate order will issue.

---

**6.** The City has moved to dismiss this suit for failure to join an indispensable party, the Commonwealth. The City misperceives the application of Rule 19 to these circumstances. While joinder of the Commonwealth might have been convenient, it was not essential. Complete relief can be granted by this Court in the dispute between the United States and the City. Either the City is obliged to repair, if the obligations are personal, or it is not, if the obligations run with the land or some other defense exists.

**7.** As part of the pretrial stipulation filed in this case the parties agreed that the access road has never been formally dedicated as a public street. The Court perceives no inconsistency between this stipulation and the finding of implicit recognition of the access road as a public way.