397 A.2d 1220

**George LUPYAN, Jr., and Stella Lupyan, his Wife**

v.

**Joseph LUPYAN, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 23, 1978.

Decided Feb. 15, 1979.

304

John N. Scales, Greensburg, for appellant.

S. Wayne Whitehead, Greensburg, and with him, Christ C. Walthour, Jr., Greenburg, for appellees.

Before VAN der VOORT, SPAETH and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This proceeding in equity was brought primarily to establish the line which would divide a farm of 61.0346 acres, originally owned by George Lupyan (Sr.) and Mary Lupyan, his wife in Westmoreland County, as they intended that it be divided by two deeds they executed and delivered to their two sons, George Lupyan, Jr., one of the plaintiffs (and his wife Stella, the other plaintiff) and Joseph Lupyan, the defendant.

The deed to George Lupyan, Jr. and Stella, his wife, dated July 5, 1955 conveyed the westerly one-half of the farm by describing the entire farm of 61.0346 acres and then stating the part thereof being conveyed to be "the western half

thereof containing 30 acres more or less to be determined by later survey."

The deed to Joseph Lupyan dated October 12, 1967 described and conveyed the entire 61.0346 acre farm, excepting and reserving from said deed 30 acres heretofore conveyed to George Lupyan (Jr.). This deed was made by George Lupyan (Sr.) as a widower, his wife Mary having died previously.

Subsequently, George Lupyan (Sr.) had a survey made of his farm, dividing it into two parts. This is known as the Samella survey. Based on that survey said George Lupyan (Sr.), then a widower, executed and recorded a deed for one part containing 30.83 acres described by metes and bounds to his son Joseph Lupyan and another to the plaintiff George Lupyan, Jr. et ux. for the other part, also described by metes and bounds. Said deeds dated July 22, 1975 were recorded July 25, 1975 before delivery to the grantees. George Lupyan (Sr.) died September 13, 1975.

In addition to the aforesaid deeds dated July 22, 1975, George Lupyan (Sr.) made an affidavit on June 16, 1975 in which he stated that his intentions at the time he made the two earlier deeds to his sons were that Joseph was to have 31 acres having erected thereon a two story frame dwelling house, frame barn and out-building commonly known as the farm and that George, Jr. and his wife were to have the remaining 30 acres which he described by adjoiners. The two parts were divided by an angular line as indicated by the Samella survey, not a straight line as shown on the Hartman survey which had been made at the request of the plaintiffs.

The apparent dispute in the case relates to the interpretation to be placed on the two earlier deeds. The plaintiffs contend their deed of July 5, 1955 contains no ambiguity and must be interpreted as intending a straight north to south line through the middle of the farm as shown by the Hartman survey. The defendant contends that it is ambiguous and that the lower court should have considered extrinsic evidence to determine its intention, which would have led

to a conclusion that the Samella survey should be accepted to show the proper division.

■ The lower court found no ambiguity in the first deed to plaintiffs and based its decree on an arbitrary line through the tract as shown on the Hartman survey. We do not agree and conclude that the case must be remanded to the lower court for further consideration.

The lower court, in finding no ambiguity in the deed to plaintiffs, accepted it literally as dividing the farm into two parts, approximately equal in area, however it drew an arbitrary line through the tract. In doing so, it relies on, and the appellee cites, two cases in support of its finding that no ambiguity exists in plaintiffs' deed. *Hartford Iron Mining Co. v. Cambria Mining Co.*, 80 Mich. 491, 45 N.W. 351 (1890) and *Owen et al. v. Henderson*, 16 Wash. 39, 47 P. 215 (1896). These cases indicate the literal meaning of the word "half" is one of two equal parts into which anything may be divided. We do not disagree with this precept but question its application to a situation as is presented here.

It is certain that the lower court refused to give any consideration to the deed made to the defendant in 1967, or to the affidavit of intention made by George, Sr. in 1975 which had been prepared by his lawyer; or to the Samella survey made at his request; or to the two deeds executed by him in 1975 based on the Samella survey. Its reason for ignoring these documents is based on the further argument that since the deed to plaintiffs was unambiguous, George, Sr. had no remaining interest in the part conveyed to plaintiffs in 1955 when he made the affidavit and subsequent deeds in 1975.

The use of the word "half" lends itself to more than one meaning. In *Hartford Iron Mining Co. v. Cambria* (supra), the dispute was whether the division into halves meant that a line should be run due north and south from a point equidistant between *parallel* sidelines irrespective of acreage or at some other location to accomplish an equal division of acreage. The north boundary in that case was a lake with

an irregular shore line and the east and west line were of different widths. It was held that half meant half in quantity and the line was not drawn equidistant from the parallel sidelines.

■ *Hartford* recognizes, as do we, that there can be no universal rule how the word "half" is to be interpreted since it is often used in conveyances when the context indicates a sense quite different from the literal meaning, citing as an example when two parts of a farm are separated by a river or a highway, in which case each part may be called a half without regard to quantity of acreage. In all such cases, the words must be taken in the sense intended, if that is evident; and if not, the accompanying circumstances and the subsequent acts of the parties may indicate the true meaning, regardless of the literal significance of the word "half" being two equal parts into which anything may be divided.

In *Owen et al. v. Henderson* (supra), quantity was also the governing factor; and the boundary line was established to run north and south so as to divide the tract into two equal parts, not midway between the parallel sidelines of the lot being divided.

In our present case, the one thing that is clear from reading the 1955 deed to plaintiffs is that it was intended to divide a 61.0346 acre tract into two approximately equal parts, one to be designated the western half comprising 30 acres more or less. However, it is not clear how this was to be done unless by a survey to be made subsequently as specified in the deed which reads "—30 acres more or less to be determined by later survey."

If we were to consider literally the words western half, it would be necessary to draw a straight line through the tract running due north and south in order to determine the true western half of 30 acres more or less. This line would run diagonally through the original farm dividing it in a manner neither party desires, and would place some of the buildings on the part claimed by plaintiffs. It is not disputed that

George, Sr. continued to occupy the home, barn and out-buildings until his death in 1975, and conveyed the eastern half of his farm *with the buildings* to his son, Joseph, in 1967.

However, the entire tract is not regular. Its frontage on the public road being 1140.4 ft. whereas its width in the rear is approximately 725.00 ft. and irregular. Its westerly line is 2628.20 ft. and straight whereas its easterly line is irregular and approximately 2912 ft. long.

Plaintiffs would have the dividing line drawn straight and parallel to the westerly line of the original tract with a frontage of 518.98 ft. arbitrarily established on the public road. Although this would give them an almost perfect parallelogram, it would leave to defendant an irregular tract with 636.42 ft. frontage on the road, approximately 725 ft. in the rear and irregular on two sides. Although the plaintiffs do not claim ownership of any buildings, other than those they have constructed, their suggested division would to some extent interfere with defendant's enjoyment of some of the buildings on the part claimed by him. There is also a further slight variation if plaintiffs' division is to be adopted. According to his Hartman survey, the area of his half is 30.029 acres whereas the area of the remaining half is 31.017 acres.

On the other hand, the division suggested by the defendant is also irregular, the dividing line being angular and not straight.

Plaintiffs argue that their Hartman survey was made in accordance with recognized surveying principles and cite *Boundary Control and Legal Principles by Brown*, page 252 "Principle. Where the easterly and westerly lines of a lot are shown as parallel on the original map, and in fact are nearly parallel, and the easterly half and westerly half are conveyed, the dividing line between the easterly and westerly half is made on the mean bearing of the two lines." We do not question this principle but cannot see its application to the present tract which has no parallel lines.

■ We are, therefore, led to the conclusion that the 1955 deed to the plaintiffs is not free from ambiguity and that its intended purpose must be determined from a consideration of the objective of the parties, their purpose and the conditions existing when the deed was made. This would include the understanding of the term western half the parties had in mind at the time the deed was executed. *In Re Conveyance of Land Belonging to City of DuBois*, 461 Pa. 161, 335 A.2d 352 (1975), *DiCarlo v. Petrillo*, 387 Pa. 212, 127 A.2d 657 (1956), *Rusciolelli v. Smith*, 195 Pa.Super. 562, 171 A.2d 802 (1961). Also, the conduct of the parties subsequent to the execution of the deed is relevant. *Taylor v. Gross*, 195 Pa.Super. 225, 171 A.2d 613 (1961).

Although considerable extrinsic evidence was admitted in this trial, we find from the statements of the trial judge, and adopted by the court en banc, that it was disregarded because of its finding that the deed to plaintiffs was unambiguous. In Conclusion of Law No. 4 it is stated "The language of the deed of July 5, 1955, is unambiguous and any resort to extrinsic evidence is improper"; and in the Discussion "The deeds of George Lupyan, Sr. in July 1975 are nullities because he no longer had an interest in the subject property" and "The Court admitted into evidence an affidavit dated July 16, 1975 executed by George Lupyan, Sr. to express his intention as what division he had intended by the earlier deeds. This was error. There being no ambiguity, an expression of his previous intention by a later affidavit has no force and effect."

Since this case must be remanded to the lower court for further consideration, and hearing, if necessary, we shall not conclude any other matters arising from this record, except the admissibility of the affidavit of George, Sr. which was objected to as being hearsay. It would be well if we resolved this question before returning the record to the lower court.

■ Evidence of a decedent's declaration of intention is admissible in Pennsylvania as an exception to the hearsay rule where such intent is itself a material fact. *Ickes v.*

*Ickes,* 237 Pa. 582, 85 A. 885 (1912). Certainly, in the instant case, the intention of the affiant when he made the 1975 deeds is a material fact and properly admitted. This is particularly so in light of the provision in the 1955 deed to plaintiff to the effect that the conveyance was subject to a future survey. As was stated by the court in *Commonwealth v. Marshall,* 287 Pa. 512, 135 A. 301 (1926)

> "Intention, viewed as a state of mind, is a fact, and the commonest way for such a fact to evince itself is through spoken or written declarations. It is therefore because of the impossibility, in many cases, of proving intention apart from personal declarations, that they are admitted. The true basis of their admission, then, is necessity, because of which an exception to the hearsay rule is recognized, rather than that they are part of the res gestae."

Also see *Commonwealth v. Wilson,* 394 Pa. 588, 148 A.2d 234 (1959).

Although the affidavit is not conclusive on the issue of grantor's intent, it is at least admissible as circumstantial evidence to be considered by the trier of fact.

The decree is reversed and the record remanded to the lower court for further hearing and consideration in accordance with this opinion.