J-A12017-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| BLACKWOOD, INC., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| READING BLUE MOUNTAIN & | : | |
| NORTHERN RAILROAD COMPANY, | : | |
| | : | |
| Appellee | : | No. 1633 MDA 2014 |

Appeal from the Order entered August 29, 2014,
Court of Common Pleas, Schuylkill County,
Civil Division at No. S-3238-08

BEFORE: BOWES, DONOHUE and ALLEN, JJ.

CONCURRING AND DISSENTING MEMORANDUM BY DONOHUE, J.:

**FILED AUGUST 28, 2015**

The 1976 and 1990 Deeds together convey **two** tracts of land to Blue Mountain, specifically the tracts beneath the West End and Swatara Branch lines. These two deeds do not describe, or even mention, the Middle Creek Extension, however, and thus they cannot possibly convey the real property beneath this line to Blue Mountain. Accordingly, I respectfully dissent from this portion of the Majority's decision.

In determining that Blue Mountain owns the land beneath the West End Branch and the Swatara Branch, the Majority engages in a careful analysis of the language of the 1976 and 1990 Deeds, including in particular their descriptions of the conveyances in Exhibit A of both deeds as well as the maps in Exhibit B of the 1990 Deed. *See* Maj. Mem. at 23-26. The

Majority conducts no similar analysis with respect to the Middle Creek Extension, and instead diverges into a discussion of the "intentions" of the parties to the deeds. *See id.* at 26-30. Although the certified record apparently contains no representations from any representatives of Reading Company, Conrail, or Blue Mountain regarding what real property these parties intended to convey, the Majority nevertheless attempts to glean their intentions by referencing the purposes and requirements of the federal bankruptcy law that created Conrail in the 1970s. *See id.*

The language of the two deeds is determinative of the real property conveyed in this case. In *Ralston v. Ralston*, 55 A.3d 736 (Pa. Super. 2012), this Court set forth the following relevant principles regarding the proper interpretation of deeds:

- The nature and quantity of the interest conveyed must be ascertained from the deed itself;

- The focus is not what the parties may have intended by the language but what is the meaning of the words they used. Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning; and

- To ascertain intention, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

*Id.* at 742; *see also Mackell v. Fleegle*, 801 A.2d 577, 581 (Pa. Super. 2002) (citing *Brookbank v. Benedum-Trees Oil Co.*, 131 A.2d 103, 107

(Pa.1957)); *Consolidation Coal Co. v. White*, 875 A.2d 318, 326-27 (Pa. Super. 2005).

In my view, the Majority fails to apply any of these three basic principles in connection with the land beneath the Middle Creek Extension. With regard to the first principle, "the deed itself" cannot possibly convey the land beneath the Middle Creek Extension to Blue Mountain, as neither the 1976 nor the 1990 Deed describes, references, or even mentions this tract of land. Instead, Exhibit A to both deeds contains descriptions of the West End Branch (Line Code 0350) and the Swatara Branch (Line Code 0383), and Exhibit B to the 1990 Deed includes four maps depicting the beginning and end of these two lines. Exhibit A to both deeds contains no description of the Middle Creek Extension and Exhibit B to the 1990 Deed contains no maps depicting the beginning and end of this third rail line. Although the Majority suggests that the Middle Creek Extension is just an "arm" of the Swatara Branch, *see* Maj. Mem. at 29, the certified record contains no support for any such assumption – including the absence of any description of this "arm" in Exhibit A of the two deeds. Blue Mountain's own railroad industry expert, Richard Frey, testified that the Middle Creek Extension was

a separate rail line.[1]  Blue Mountain's Motion for Cross Motion for Summary Judgment, 1/29/2014, Exhibit F ¶ 18.

The second basic principle requires us to determine the legal effect of deeds, not by what the parties "may have intended" but instead based upon "the meaning of the words they used."  **Ralston**, 55 A.3d at 742.  To ascertain the meaning of the words they used, we must give effect to "all the language of the instrument, and no part shall be rejected if it can be given a meaning."  **Id.**  The Majority's determination that the 1976 and 1990 Deeds conveyed the land beneath the Middle Creek Extension to Blue Mountain runs afoul of this directive.  The 1976 Deed unambiguously states that Reading is transferring "[a]ll of [Reading's] right, title and interest, legal and equitable, in and to the real property located in the County of Schuylkill, Commonwealth of Pennsylvania **as described in Exhibit A**," and Exhibit A includes no reference (explicit or implicit) to the Middle Creek Extension.  1976 Deed, 3/29/76, at 1 (emphasis added).  Any construction of the 1976 Deed that deems it to transfer the land beneath the Middle Creek Extension to Conrail must, of necessity, reject and ignore the "as described in Exhibit A" language, as well as the contents of Exhibit A itself.  This we cannot do.

Even if the learned Majority is correct that the legal effect resulting from the purposes and requirements of the federal bankruptcy legislation

---

[1] "In 1851, another branch line was laid, coming off the Swatara Branch in a westerly direction, which became known as the 'Middle Creek extension.'" **Id.**

was a transfer of the Middle Creek Extension to Conrail (despite the absence of any language of the 1976 Deed to effectuate the transfer), this conclusion still does not provide a basis for a claim of title by Blue Mountain. The 1990 Deed merely reflects a freely negotiated transfer of private property between private entities. The language of the 1990 Deed is clear and unambiguous, namely that Conrail was transferring its real property "described in Exhibits 'A' and generally indicated in Exhibit 'B' hereof." 1990 Deed, 12/14/90, at 1. As discussed hereinabove, Exhibits A and B to the 1990 Deed together describe and depict just two rail lines (the West End and Swatara Branches), with no reference to the Middle Creek Extension. Even if the certified record contained evidence regarding the intention of the parties with respect to the 1990 Deed (which it does not), no reasonable interpretation of the actual language of the 1990 Deed could construe it to effectuate a transfer of the land beneath the Middle Creek Extension from Conrail to Blue Mountain. We note that neither party to the 1990 Deed sought equitable reformation based upon unilateral or mutual mistake.

The third basic principle of deed construction requires us to interpret "the language of a deed … in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed." *Ralston*, 55 A.3d at 742. The Majority's reasoning appears to be that since the parties to the two deeds intended to convey the land beneath all three rail lines, the deeds should be interpreted to do so (even

though the language the parties actually used expresses no such intent). I cannot agree. Our task is to interpret the language of the deeds, and the language of the two deeds at issue here simply does not convey the land beneath the Middle Creek Extension to Blue Mountain. Even if we were to conclude that the absence of any reference to the Middle Creek Extension in the 1976 and 1990 Deeds reflects mere drafting errors, this Court has no power to correct such mistakes.

Finally, the Majority's repeated references to the continuous use of the Middle Creek Extension by the various railroad companies[2] suggests that, at bottom, Blue Mountain's claim of title is based upon adverse possession, although the Majority conspicuously avoids discussion of this issue. It has long been the law of Pennsylvania, however, that a railroad corporation may not acquire title to real property by adverse possession. ***See, e.g.***, ***Sayre Land Co. v. Borough of Sayre***, 121 A.2d 579, 582 (Pa. 1956). As this Court has explained, "[t]he reason that adverse possession cannot be set up in such a case is that the law presumes, when a railroad company takes land

---

[2]    The Majority also suggests that continuous use may be relevant to interpretation of the two deeds. In so doing, the Majority cites to this Court's decision in ***Lupyan v. Lupyan***, 397 A.2d 1220 (Pa. Super. 1979), for the proposition that when construing a deed, "the conduct of the parties subsequent to the execution of the deed is relevant." Maj. Mem. at 30 (quoting ***Lupyan***, 397 A.2d at 1224). In ***Lupyan***, however, this Court found that the deed at issue was ambiguous and thus utilized evidence relating to the conduct of the parties to resolve the ambiguity. ***Lupyan***, 397 A.2d at 1224. No ambiguity has been identified in the language of the 1976 or 1990 Deeds, however, and thus ***Lupyan*** is inapplicable to this case.

for its corporate purposes, it does so under its high right of eminent domain, and not as a willful trespasser, whose trespass may grow into a title." ***Ontelaunee Orchards v. Rothermel***, 11 A.2d 543, 546 (Pa. Super. 1940).

For these reasons, in my view Blue Mountain has not established its ownership of the land beneath the Middle Creek Extension as a matter of law, and thus summary judgment on this issue was error. I therefore respectfully dissent from this portion of the Majority's memorandum decision. I join in its reasoning and disposition with respect to all other issues addressed therein.