## Joseph C. Hutchison, Appellant, *v.* John Thomas.

*Contract—Building inspection—Covenants.*

Where the owner agrees by a writing duly acknowledged and recorded to convey land, and to lend money to the grantee to aid him in building houses upon a certain number of lots into which the land is to be divided, the agreement providing that the houses shall be " built ten feet back from the line of the street," and there being no covenant that thereafter houses shall not be built on the ground in a different manner, the stipula- tion as to the building line is personal and for the benefit of the grantor only; it is fully performed when the money advanced by the grantor has been repaid and his interest in the property has ceased, and one who sub- sequently becomes the owner of one of the lots has no standing to main- tain an injunction against the owner of another lot to restrain him from erecting a new building over the line stipulated in the agreement.

Argued Jan. 13, 1899. Appeal, No. 272, Jan. T., 1898, by plaintiff, from decree of C. P. No. 2, Phila. Co., June T., 1898,

No. 730, on bill in equity.   Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Bill in equity for an injunction.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was the decree refusing preliminary injunction.

*Joseph P. McCullen,* for appellant.—This is not an action at law, but a bill in equity, and the controlling element is the intention of the parties to the covenant: Bald Eagle Valley Railroad Co. v. Nittany Valley Railroad Co., 171 Pa. 284.

In construing the covenant we are to take into consideration the surroundings of the parties at the date of the conveyance, the subject of the contract, the purpose of it, and the words of it: Landell v. Hamilton, 175 Pa. 327; Tulk v. Moxhay, 2 Phillips, 774; Western v. MacDermot, L. R. 1 Eq. Cases, 499; Tallmadge v. East River Bank, 26 N. Y. 105; Muzzarelli v. Hulshizer, 163 Pa. 643; Geible v. Smith, 146 Pa. 276; Ormsby v. Pinkerton, 159 Pa. 458; Parker v. Nightingale, 6 Allen, 341; Newbold v. Peabody Heights Co., 70 Md. 493; Hodge v. Sloan, 107 N. Y. 244; Trustees of Columbia College v. Lynch, 70 N. Y. 440; Whitney v. Union Ry. Co., 11 Gray, 359.

Where land is sold in lots, the inference and presumption are that the covenants are intended for the common benefit of the several purchasers, and this is especially true where the whole property is sold: Nottingham Patent Brick, etc., Co. v. Butler, L. R. 15 Q. B. 261; Collins v. Castle, L. R. 36 Ch. D. 243; Raynor v. Lyon, 46 Hun (N. Y.), 227.

Where the agreement for a building line is in accordance with a general plan for all the lots, the authorities agree that this is evidence that the intention was that the covenant should not be merely personal in its nature but that it was meant to be for the benefit of the land and to run with the title: Skinner v. Shepard, 130 Mass. 180; Linzee v. Mixer, 101 Mass. 512; Sanborn v. Rice, 129 Mass. 387; Mulligan v. Jordan, 50 N. J. Eq. 363; Winfield v. Henning, 6 C. E. Green, 188; Hamlen v. Werner, 144 Mass. 396; Peck v. Conway, 119 Mass. 546; Western v. MacDermot, L. R. 1 Eq. Cases, 499; Parker v. Nightingale, 6 Allen, 341; Hano v. Bigelow, 155 Mass. 341;

Jackson v. Stevenson, 156 Mass. 496 ; Child v. Douglas, Kay, 560; Dana v. Wentworth, 111 Mass. 291; Jeffries v. Jeffries, 117 Mass. 184; Jewell v. Lee, 14 Allen, 145 ; Badger v. Board-man, 16 Gray, 559.

*John C. Bell,* with him *Francis G. Taylor,* for appellee.—It has always been held in Pennsylvania that no easement of light and air could be created by prescription: Haverstick v. Sipe, 33 Pa. 368 ; King v. Large, 27 Legal Int. 148 ; McDonald v. Bromley, 6 Phila. 302; Rennyson's App., 94 Pa. 147.

An agreement between the owners of adjacent estates for the erection of buildings thereon in a uniform manner does not, by implication, require that the buildings shall for ever thereafter remain in the same position or the same size and shape as when erected : Hubbell v. Warren, 8 Allen, 173 ; Bradley v. Walker, 138 N. Y. 291.

Restrictive covenants relative to the use of buildings are to be construed most strictly against the covenant, and unless the thing sought to be enjoined is plainly within its provisions, an injunction will not issue in enforcement therefor : Clark v. Jammes, 87 Hun, 215 ; St. Andrew's Lutheran Church's App., 67 Pa. 512; Hutchinson v. Ulrich, 145 Ill. 336.

The burden is on a subsequent purchaser to show that the restriction was not for the benefit of the grantor and his personal convenience : Badger v. Boardman, 16 Gray, 559 ; Jewell v. Lee, 14 Allen, 145 ; Skinner v. Shepard, 130 Mass. 180 ; Eckhart v. Irons, 128 Ill. 568 ; Haeussler v. Missouri Iron Co., 110 Mo. 188; Coughlin v. Barker, 46 Mo. App. 54; Renals v. Cowlishaw, L. R. 9 Ch. D. 125.

It may be further said that in nearly if not quite all of the cases cited by the appellant restrictions were plainly established or admitted, and the opinions quoted deal with and discuss the consequences of such restrictions, holding that they may be deemed to run with the land; that they have not been abrogated or annulled, and that their violation can be enjoined, etc.

OPINION BY MR. JUSTICE FELL, March 13, 1899 :

This appeal is from the refusal of the court to grant a preliminary injunction, but by agreement between the parties the case is now heard as if a final decree had been entered refusing

the injunction and dismissing the bill. There is practically no dispute as to the facts. In 1872 J. A. T. Laws sold a tract of land in Philadelphia extending from Thirteenth to Broad street and from Castle avenue to Morris street, to E. A. Yarnall, for $85,440, and agreed to advance him $50,160 to enable him to erect buildings thereon. Yarnall agreed to pay for the land and to secure the advances by creating ground rents and mortgages in favor of Laws on the lots into which the tract was to be divided. By an agreement between the parties which was acknowledged and recorded it was provided that the tract should be divided into forty-two lots, and buildings erected thereon in accordance with certain plans and specifications. The specifications contained numerous details as to the size and design of the houses, the materials of which they were to be built, and among other provisions there was one that they should be built ten feet back from the street, with porticoes in front. This agreement was fully complied with. The houses were erected in 1873, and all of the ground rents and mortgages have been extinguished or satisfied.

The plaintiff in the bill became the owner of the lot at the northeast corner of Broad street and Castle avenue, with the house thereon erected, which fronted on Broad street, with side windows facing Castle avenue. The defendant is the owner of the adjoining property on the north, and in 1898 tore down the house with the intention of erecting a new one which would extend beyond the line fixed by Laws and Yarnall in 1873. The bill was filed to restrain him from so building.

The first article of the agreement between Laws and Yarnall provided for the sale of the land, the second for the advances that were to be made, the third for the creation of ground rents and mortgages to secure the purchase money and the advances. The fourth article provided as follows: " The said E. W. Yarnall, in order to further and better secure the said advances and purchase money, shall and will erect, or cause to be erected, within one year, forty-two houses upon said forty-two lots of ground, according to the specifications hereto annexed, which specifications are made and form a part of this agreement." The provision on which the plaintiff relies is in the specifications for six of the houses on Broad street, and is found in the following connection: " Each house to be twenty feet front and seventy-

two feet deep, containing thirteen rooms, including bath room, and to be built ten feet back from the line of the street, the cellars to be seven feet in the clear from the bottom of the joists and to extend under the whole building, with an elevation of three feet," etc. Following this in the same sentence are minute directions which relate to the height of the different stories, the material to be used and the manner in which the houses are to be built. These include the laying of the joists and floors, the size of the studding, the plastering, mantels, ranges, heaters, washboards, gas pipes and fixtures, arrangement of kitchens and bath rooms, the fence boards for the side yards, the iron fences in front, painting and paving,—in fact all of the minute details of construction. As it was by virtue of the agreement for the sale and improvement of the property that Yarnall took the title which has passed to the parties to the suit, the covenant might be binding, notwithstanding that they are not incorporated in the deed, if they were meant to be for the benefit of the land. Whether they were so intended, or were merely personal for the benefit of the grantor, is the primary question.

The manifest purpose of the agreement was to secure the development of the property in a manner which Laws considered best calculated to secure the purchase money and the advances which he was about to make. It related to the houses then to be built, and contained no covenant that thereafter houses should not be built on the ground in a manner other than that provided in the specifications, and not even a suggestion can be found in it that no house except of the kind specified shall ever be erected on the ground. The provision that the agreement should not be taken to be merged by the execution of the deed was simply a wise provision against a possible claim that all prior agreements were merged in the deed.

Our conclusion is that the agreement was a builder's agreement merely; that the covenants were personal and for the benefit of the grantor only; that they were fully performed and the agreement at an end when the ground rents and mortgages were paid and the grantor's interest in the property ceased. Under this view of the agreement the appellant has no standing, and the injunction was properly refused.

The decree of the court of common pleas is affirmed and the bill is dismissed at the cost of the appellant.