James WALSH, Appellant,

v.

**EAST PIKELAND TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued June 5, 2003.

Decided Aug. 7, 2003.

Douglas C. Maloney, Langhorne, for appellant.

Vincent M. Pompo, West Chester, for appellee.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge (P.), and KELLEY, Senior Judge.

KELLEY, Senior Judge.

James Walsh (Walsh) appeals from an order of the Court of Common Pleas of Chester County (trial court), which denied his appeal from the decision of the Board of Supervisors of East Pikeland Township (Board) denying his sketch plan application for subdivision of his property. We reverse and remand.

Walsh, together with two others, purchased an 8½-acre parcel of land (property) located in the R–1 Farm Residential zoning district of East Pikeland Township (Township) on February 28, 2001. The property is occupied by a farm house and other structures. The property was purchased from Chase Manhattan Mortgage Corporation for the purchase price of $315,000. Chase apparently purchased the property in 1999 from the Sheriff of Chester County through a foreclosure proceeding.

The deed to the property refers to a Huntfield Subdivision Plan that was recorded on May 4, 1989. On that date, a subdivision plan for the Huntfield Subdivision was recorded with the Chester County Recorder of Deeds in which the subject property was designated as Lot 52. The recorded Huntfield Subdivision Plan also notes that Lot 52 is "Deed Restricted", and includes a cross-hatching on 1.16 acres along the periphery of Lot 52. The legend section of the recorded plan contains a note identifying the cross-hatch symbol as "1.16 AC of open space to be deeded with lot 52."

In 2001, Walsh submitted a sketch plan application to the Township proposing to subdivide the property into three residential lots. The application was reviewed by the Township Engineer and the Township Planning Commission on January 14, 2002. At this meeting, an issue was raised concerning possible deed restrictions. Walsh advised the Commission that a title search had been performed and while there were deed restrictions relating to the farm house, which was "protected", there were no restrictions against further subdivision. The Commission recommended approval of the sketch plan application.

The Board first considered the sketch plan application at its meeting of January 5, 2002 and raised the issue of deed restrictions. The matter was tabled with the direction that the Township Solicitor investigate the public record of the 1989 Huntfield Subdivision Plan approval for any restrictions on the property.

By letter dated February 19, 2002, the Township Solicitor advised the Board that a fully executed "Declaration of Restrictions" dated April 3, 1989 was submitted to the Township in 1989, but that it had not been recorded. The Declaration provides that Lot 52 shall not be further subdivided, and that the open space buffer of 1.16 acres shall only be used for buffer tree planting, visual and passive recreational use. The Declaration further provides

that these restrictions shall bind Lot 52 in perpetuity.[1,2]

Due to these restrictions, the Board then voted to deny Walsh's sketch plan application on February 19, 2002. On February 20, 2002, the Board sent Walsh a letter notifying him that the application was denied.[3] On February 22, 2002, the Township filed the Declaration with the Chester County Recorder of Deeds. Walsh filed an appeal in the trial court from the Board's decision. The trial court denied Walsh's appeal by order dated October 22, 2002. Walsh then filed the instant appeal.[4]

In this appeal, Walsh claims that the Board erred in denying his application based upon the deed restriction contained in the Declaration of Restrictions dated April 3, 1989, precluding the further subdivision of his property, which was filed after he had purchased the property and sub-

mitted the sketch plan application to the Board. We agree.

In *Wolter*, this Court recently considered the same issue in a similar factual context and stated the following, in pertinent part:

On appeal, the Township contends that the trial court erred in reversing its decision denying Property Owner's request for subdivision because the condition placed upon the Freyberger Subdivision Plan when it was granted that the property not be further subdivided for 99 years applied to Property Owner's property, and because that restriction "ran with the land", the deed restriction did not have to be recorded in order to be enforced.

As to whether the restriction could be enforced against Property Owner regardless of whether the restriction had

---

1. Specifically, the Declaration states that the Huntfield Subdivision Plan had been submitted to the Board for approval by a predecessor in title to the property, and that:
 [A]s a condition to said approval, the [Board] requested and the [predecessor in title] has agreed to impose the following restrictions with reference to Lot 52 as shown on said plan.
 NOW, THEREFORE, this Declaration witnesseth that the conveyance of Lot 52 from the above recited tract shall be under and subject to the following covenants and conditions which shall be deemed to run with the land and be binding upon the Grantee, his successors in title and assigns:
 The premises hereby conveyed, being Lot 52 as shown on the above-referenced plan, shall not be further subdivided.
 The open space buffer, as shown on the above recited plan, consisting of 1.16 acres, more or less, shall surround Lot 52 and protect the stream leaving Lot 52, all as shown on Sheet 4 of said plan, shall be used for buffer tree planting, visual and passive recreational use only and there shall be no other construction, placement or maintenance of buildings or structures within the aforesaid 1.16 acre buffer area.

 The aforesaid conditions and restrictions shall bind the aforesaid Lot 52 and any permitted subdivision thereon in perpetuity.

2. The Township did not explain where the unrecorded Declaration had been since 1989 until unearthed by the Solicitor, or why it had not been recorded.

3. The letter stated that the reasons underlying the denial of the application were premised upon "[t]he Final Plan of the Huntfield Subdivision [which] indicated that Lot 52 is 'deed restricted' and shall not be further subdivided; and that 1.16 acres of Lot 52 shall be dedicated to open space in the Huntfield Subdivision."

4. In a land use appeal, where a full and complete record was made before the township, and the trial court took no additional evidence, this Court's scope of review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law. *Wolter v. Board of Supervisors of Tredyffrin Township*, —— Pa.Cmwlth. ——, 828 A.2d 1160 (Pa.Cmwlth.2003).

been recorded providing him with notice of the restriction, the Township relies on numerous cases which discuss restrictive covenants which "run with the land", i.e., bind subsequent purchasers of real property to the covenant entered into by their predecessor. It cites to *Goldberg v. Nicola,* 319 Pa. 183, 178 A. 809 (1935); *Finley v. Glenn,* 303 Pa. 131, 154 A. 299 (1931); *Harmon v. Burow,* 263 Pa. 188, 106 A. 310 (1919); *Hutchinson v. Thomas,* 190 Pa. 242, 42 A. 681 (1899); *Lynch v. Urban Redevelopment Authority of Pittsburgh,* [496 A.2d 1331, 91 Pa. Cmwlth. 260 (1985)]; and *Estate of Hoffman v. Gould,* 714 A.2d 1071 (Pa.Super.1998), *petition for allowance of appeal denied,* 559 Pa. 691, 739 A.2d 1057 (1999).

**5.** Section 1 of the Recording Act of 1925 provides, in pertinent part:

> All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, *shall be adjudged fraudulent and void as to any subsequent bona fide purchaser* or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice *unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim* ...

21 P.S. § 351 (emphasis added). *See also* Section 1 of the Act of March 18, 1775, Sm.

However, those cases are inapplicable because, in those cases, the restrictive covenant was recorded in the original deed between the parties who had entered into the restrictive covenant, thereby placing subsequent purchasers on notice that the restriction existed. Moreover, pursuant to the Recording Act of May 12, 1925, P.L. 613, *as amended,* 21 P.S. § 351[5], in order to bind a successor in title to a restrictive covenant, the successor must have "actual or constructive notice unless such deed, conveyance, contract or instrument of writing shall be recorded". In *Finley,* our Supreme Court discussed at length the necessity of recording deeds or other "muniments of title" in order to provide future purchasers with notice of

L. 422, *as amended,* 21 P.S. § 444 ("[A]ll deeds and conveyances, which, from and after the passage of this act, shall be made and executed within this commonwealth of or concerning any lands, tenements or hereditaments in this commonwealth, or whereby the title to the same may be in any way affected in law or equity, shall be acknowledged by the grantor, or grantors, bargainor or bargainors ... and shall be recorded in the office for the recording of deeds where such lands, tenements or hereditaments are lying and being, within ninety days after the execution of such deeds or conveyance, and *every such deed and conveyance that shall at any time after the passage of this act be made and executed in this commonwealth, and which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valid consideration* ...") (emphasis added); Section 1 of the Act of April 24, 1931, P.L. 48 *as amended,* 21 P.S. § 356 ("[A]ll agreements in writing relating to real property situate in this Commonwealth by the terms whereof the parties executing the same do grant, bargain, sell, or convey any rights or privileges of a permanent nature pertaining to such real property ... shall be acknowledged according to law by the parties thereto ... and shall be recorded in the office for the recording of deeds in the county or counties wherein such real property is situate.").

encumbrances upon their title consistent with the Recording Act, as well as the duty placed upon purchasers to examine those records when purchasing the property. Because a property owner must have actual notice or constructive notice of an encumbrance upon their property in order for that encumbrance to be enforced against him, the Township's argument that the deed restriction prohibiting further subdivision of the property could be enforced against Property Owner regardless of whether he had notice of the restriction is without merit.

*Wolter*, at 1162–63 (footnotes omitted).[6]

In the instant case, the only deed restriction relating to Walsh's property that had been recorded prior to his purchase of the property, and the recording of that deed, was the open space buffer of 1.16 acres along the periphery of his property. As the document containing the restrictive covenant precluding the further subdivision of Walsh's property was not recorded prior to his purchase of the property, and the recording of that deed, it could not serve as the basis for the denial of his sketch plan application. *Wolter*; Section 1 of the Recording Act of 1925, 21 P.S. § 351; Section 1 of the Act of March 18, 1775, 21 P.S. § 444.

Accordingly, the order of the trial court is reversed, and the case is remanded to that court for further remand to the Board for proceedings consistent with this opinion.[7]

### ORDER

AND NOW, this 7th day of August, 2003, the order of the Court of Common Pleas of Chester County, dated October 22, 2002 at No. 02–02404, is REVERSED and the case is REMANDED to that court for further REMAND to the Board of Supervisors for East Pikeland Township for proceedings consistent with this opinion.

Jurisdiction relinquished.

---

**6.** *Accord Emrick v. Multicon Builders, Inc.*, 57 Ohio St.3d 107, 110, 566 N.E.2d 1189, 1194 (1991) ("[A]n unrecorded land use restriction is not enforceable against a bona fide purchaser for value unless the purchaser has actual knowledge of the restriction. Although actual knowledge in some instances may be inferred, it may not be imputed to the purchaser on the basis of mere familiarity with the land use restriction recorded in another county, or on the basis of awareness of the bare existence of the document containing the restrictions.").

**7.** In this appeal, Walsh also sets forth an argument regarding the applicability of Section 508 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10508. This argument flows from comments made in a footnote to the trial court's order denying Walsh's appeal which raised, as an aside, the issue of whether the requirements of Section 508 of the MPC should apply to the Board's disposition of his application. However, any consideration of this argument was rendered moot by the trial court's consideration of the merits of Walsh's claims regarding the Board's decision denying his application. Moreover, the consideration of the merits of this argument is patently unnecessary based on our disposition of this case.